OPINION OF THE COURT
John M. Nonna, J.
This is the continuing saga of McDuff and Tucker, two members of the species "canis familiaris”, popularly known as "man’s best friend”, who had an altercation on the streets of Pleasantville in January 1986. The Village Court previously *449 found that defendant was liable to plaintiff for his failure to keep McDuff confined and that McDuff had broken his tether. Defendant’s failure to maintain McDuff on a leash constituted a violation of Pleasantville Municipal Code § 54.25 and related provisions regulating control of animals. While affirming the Village Court’s finding of liability, the Appellate Term mandated that there be a new trial to determine the appropriate damages. The Appellate Term disagreed with the Village Court’s initial finding that Tucker’s fair market value, considering his age and mixed breeding was $10. The appellate court concluded that, "where there is no known market value, actual value to the owner or 'intrinsic’ value is the criteria.” (Zager v Dimilia, App Term, July 17, 1987, slip opn, at 2.)
Upon the retrial of the damages issue, plaintiff advances several theories to support his claim for $400. First, plaintiff contends that the cost of treatment constitutes Tucker’s "intrinsic value”. Secondly, as evidence of intrinsic value, plaintiff testified to the cost of adoption ($25), cost of sterilization ($25), and time expended training Tucker as a puppy. In addition, plaintiff asserts that Tucker’s "intrinsic” value includes "his traits to [sic] Plaintiff and members of the household; Tucker’s use in protecting the household and its various members and the value of the emotional bond between dog and members of plaintiff’s family.” Plaintiff expressly disavows any claim for emotional distress as a result of the injuries suffered by Tucker. Finally, for the first time, plaintiff interposes a claim for punitive damages.
The following testimony was elicited from plaintiff with respect to the question of Tucker’s "intrinsic value” in addition to the cost of adoption and neutering. Plaintiff claims that he spent over 100 hours training Tucker as a puppy. He trained Tucker to sit up, fetch and roll over. Unfortunately, due to his advanced age, Tucker can no longer perform these feats. Tucker also suffers from impaired hearing and arthritis. Plaintiff and his wife also testified that Tucker was a companion for their children and retained some value as a watchdog in that Tucker still possessed his bark (if not his bite).
This testimony does not help to establish a monetary amount for the "intrinsic” value of Tucker. On the one hand, the cost of neutering and adoption seems too low a reflection of its intrinsic value. Conversely, Tucker’s relationship to plaintiff and members of his family does have value separate and distinct from sentiment, an element which the law precludes from consideration in ascertaining damages. (Smith v *450 Palace Transp. Co., 142 Misc 93 [Mun Ct 1931]; Stettner v Graubard, 82 Misc 2d 132 [Town Ct 1975].) However, it is impossible to reduce to monetary terms the bond between man and dog, a relationship which has been more eloquently memorialized in literature and depicted on the motion picture screen.
The cases cited in the Appellate Term’s decision similarly do not offer much guidance in estimating Tucker’s value to plaintiff. These decisions merely recite the traditional formula that the factors determining value include the "animal’s age, health, special traits or characteristics” of value without consideration of depreciation, presumably because a domestic animal’s value increases, rather than declines as it becomes older and better trained. (See, e.g., Hersh v Heiffler, NYLJ, Oct. 18, 1985, at 16, col 5 [App Term 1985]; Blauvelt v Cleveland, 198 App Div 229 [4th Dept 1921]; Brousseau v Rosenthal, 110 Misc 2d 1054 [Civ Ct 1980]; Stettner v Graubard, 82 Misc 2d 132, supra.)
Here, the age, health and traits of Tucker do not provide an adequate benchmark of Tucker’s value, "intrinsic” or otherwise. A historical survey of the case law reveals that this rule originated in cases involving working animals, valuable for their herding or hunting skills or show dogs, prized for their pedigree. (7C Warren’s NY Negligence, Personal Property, § 3.02 [5], and cases cited therein; see, e.g., Van Alstyne v Rochester Tel. Corp., 163 Misc 258 [Rochester City Ct 1937].) Tucker’s "intrinsic” value may not have increased with age since he is less able to perform than in his youthful days and is not in good health. Further, any such "intrinsic” value would be a guess in these circumstances.
In light of the difficulty in calculating some ethereal "intrinsic” value for Tucker, the court concludes that the proper measure of damages in a case involving injury suffered by a pet animal is the reasonable and necessary cost of reasonable veterinary treatment. This approach is supported by case authorities and legal commentators. (See, Brown v Swindell, 198 So 2d 432 [La Ct App 1967] [veterinary fee awarded; claim for emotional damages dismissed]; Morgan v Patin, 47 So 2d 91 [La Ct App 1950] [dog had no market value, veterinary fee awarded].) Long ago one legal scholar articulated the rationale for this rule: "[I]n cases of injury to animals * * * the plaintiff ought to recover for expenses reasonably incurred in efforts to cure them, in addition to the depreciation in their value, or to their whole value, where they are finally lost. The law would *451 be inhuman in its tendency if it should prescribe a different rule, even where the animal eventually dies; since it would then offer an inducement to the owner to neglect its sufferings.” (2 Shearman & Redfield, Negligence § 752, at 1291-1292 [5th ed 1898].)
What constitutes reasonable treatment must be determined on a case-by-case basis in light of the injuries suffered. The traditional restriction in personal property cases that the cost of repair should not exceed the market or "intrinsic” value of the property should not be applied in a case where neither market nor "intrinsic” value is capable of calculation and a living creature is involved. (See, 7C Warren’s NY Negligence, Personal Property, § 2.02.) However, the treatment must be reasonable in light of the animal’s injuries, condition and prognosis.
The burden of establishing both the reasonableness of the treatment and its cost lies with plaintiff. (Parilli v Brooklyn City R. R., 236 App Div 577 [2d Dept 1932]; 7C Warren’s NY Negligence, Personal Property, § 2.03, and cases cited therein; cf., 7A Warren’s NY Negligence, Personal Injuries, §§4.01, 4.02 [plaintiff must establish necessity and reasonableness of medical services to recover same in personal injury action].) The suturing and antibiotic treatment applied to Tucker appears to have been necessary and reasonable in the circumstances of this case. The question remains whether the cost of that treatment was reasonable. UJCA 1804 establishes a straightforward and inexpensive means to satisfy this requirement in small claims cases. That statute provides that, "[a]n itemized bill or invoice, receipted or marked paid * * * [constitutes] prima facie evidence of the reasonable value and necessity of such services and repairs” (emphasis added). The submission of such proof would suffice to establish a prima facie case that the cost of Tucker’s treatment was necessary and reasonable. However, plaintiff has not availed himself of the statutory procedure, but rather has offered an unitemized, unpaid bill from the veterinary hospital stating an amount past due without any description of the services performed. Further, this bill has not been paid timely by plaintiff, which apparently resulted in late charges of 1.5% per month.
Plaintiff’s failure to resort to the simplified procedure is not fatal to his claim. The bill and plaintiff’s testimony of the treatment provided by the veterinarian constitute some evidence of the reasonable cost of treatment. However, this proof itself is, in the court’s view, insufficient to establish that *452 plaintiff is entitled to receive the full amount demanded. In light of the absence of further proof from plaintiff, this court is hard pressed to determine the appropriate amount that plaintiff should recover as reasonable cost of treatment. Nevertheless, charged with the mandate of the Uniform Justice Court Act that "substantial justice” be done between the parties and that the strict rules of pleading and practice be relaxed in small claims actions (UJCA 1804) the court finds that the amount of $300 represents a fair recovery for plaintiff.
Plaintiff’s belated claim for punitive damages, in the amount of $400, must be rejected. Contrary to plaintiff’s contention, defendant’s failure to maintain McDuff on a leash constitutes negligence. The Village Court previously found that McDuff broke his tether and, consequently, defendant did not intentionally release McDuff to roam the streets of Pleasantville. Further, there was no proof that McDuff had ever attacked any dog or human being in the past or possessed vicious propensities. Consequently, defendant’s conduct, to be differentiated from that of his dog, does not rise to the level of malicious, willful or wanton conduct required for the recovery of punitive damages under New York law. (Jones v Hospital for Joint Diseases & Med. Center, 96 AD2d 498 [1st Dept 1983]; Young v Delta Air Lines, 78 AD2d 616 [1st Dept 1980] [punitive damages not awarded where airline negligent in losing dog]; 36 NY Jur 2d, Damages, §§ 175, 177.) In one New York case relied upon by plaintiff, the lower court dismissed the punitive damages claim and there was no appeal from that dismissal. (Fowler v Town of Ticonderoga, 131 AD2d 919 [3d Dept 1987].) In the other New York case, Rimbaud v Beiermeister (168 App Div 596 [3d Dept 1915]), and the case authorities from other States cited by plaintiff, the defendants themselves were guilty of intentional acts. In Rimbaud v Beiermeister (supra), for instance, defendant maliciously hurled a rock at plaintiff’s dog’s head. Violation of the leash law does not per se constitute a sufficient predicate for punitive damages. Whatever primeval instincts might have triggered McDuff (and we do not presume to divine his motivations),* they should not be imputed to his master, whose *453 conduct certainly did not rise to the level necessary to sustain a claim for punitive damages.
The foregoing constitutes the decision of the court. The clerk is directed to enter a judgment for plaintiff in the amount of $300.

 One is reminded of Jack London’s prefatory verse in "The Call of the Wild”:
"Old longings nomadic leap Chafing at custom’s chain Again from its brumal sleep Wakens the ferine strain.”