**James VAN PATTEN, Plaintiff,**

v.

**The CITY OF BINGHAMTON; Stephen Jensen, Dog Commissioner; Vicki Bugonian, Dog Shelter Manager, Defendants.**

No. 3:00–CV–1104.

United States District Court, N.D. New York.

April 18, 2001.

Law Office of Timothy A. Clune, Albany NY, for plaintiff, Timothy Clune, of counsel.

City of Binghamton, Corporation Counsel, Binghamton NY, for defendants City of Binghamton and Stephen Jensen, Gregory Poland, of counsel.

Law Office of James A. Sacco, Binghamton, NY, for defendants City of Binghamton and Stephen Jensen, James A. Sacco, of counsel.

Broome County Law Department, Binghamton, NY, for defendant Vicki Bugonian, Sharon Carberry, of counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

Plaintiff James Van Patten commenced the instant action pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth and Fourteenth Amendment rights arising out of Defendants' euthanizing his dog. Presently before the Court are: (1) Defendant Bugonian's motion for abstention and/or partial summary judgment; (2) Defendant City of Binghamton and Jensen's motion for abstention; and (3) Plaintiff's cross-motion for partial summary judgment.

# I. BACKGROUND

Plaintiff was the owner of a mixed breed dog named Shadow.[1] On or about May 30, 2000, Plaintiff's grandson was walking Shadow on a leash nearby an animal clinic. At that same time, James Shelvin was leaving the clinic with his dog. Shadow got away from Plaintiff's grandson, grabbed the other dog around the neck, and knocked the other dog to the ground. Eventually, Plaintiff's grandson was able to pull Shadow off of the other dog.

Shelvin filed a report with the City of Binghamton Police Department. The City of Binghamton (the "City") took Shadow into custody. The City Court ordered that a hearing be held to determine whether Shadow was a dangerous dog. Shadow remained in custody pending the hearing.

On Friday, June 9, 2000, at ten o'clock in the morning, Plaintiff appeared with counsel, Michael Baker, Esq., at the hearing. Also present were Defendant Stephen Jensen, the hearing officer; Larry Martin, City of Binghamton Dog Warden; and James Shelvin, the owner of the dog attacked by Shadow. After the hearing, Jensen reserved decision.

Later that same day, Jensen issued a decision providing that "as of Friday, June 9, 2000, the Front Street Dog Shelter is granted authority to humanely euthanize [Shadow] ... pursuant to Section 4–23 of the City of Binghamton Code of Ordinances and Sections 118 and 374 of the [N.Y.Agric. & Mkts. Law]". Plaintiff was ordered to pay the costs reasonably expended by the shelter "in connection with the care and maintenance of this dog, as well as the additional amount it costs the shelter to euthanize the dog." At approximately 11:45 a.m., the City Clerk faxed a copy of the decision to Defendant Vicki Bugonian, Dog Shelter Manager for Broome County, New York. Copies of the decision were mailed to Plaintiff and his attorney.[2] According to Brian Hill, dog control officer for the City of Binghamton, he personally served a copy of Jensen's decision upon Plaintiff between noon and 2:00 p.m. Plaintiff denies having received a copy of Jensen's decision on June 9.

At approximately 4:30 p.m. on that same day, June 9, 2000, Bugonian telephoned Plaintiff and informed him that she was going to euthanize Shadow pursuant to Jensen's decision. Plaintiff became very emotional and pleaded with Bugonian not to euthanize his dog. Sometime thereafter, between the hours of 4:45 and 6:00 p.m. on June 9, 2000, Bugonian euthanized Shadow.

Baker, the attorney representing Plaintiff at the hearing, received a copy of Jensen's decision on June 12, 2000. He then commenced preparations to file an appeal on Plaintiff's behalf. The next day, June 13, 2000, Baker learned that Shadow had already been euthanized. Baker, thus, discontinued his efforts of filing an appeal believing it to be moot.

Plaintiff then commenced the instant action against Defendants pursuant to 42 U.S.C. § 1983 claiming violations of his Fourth and Fourteenth Amendment rights. Presently before the Court are Defendants' motion that the Court abstain from adjudicating this matter and/or sum-

---

1. Shadow apparently was a mix of Labrador and pit-bull.

2. Jensen states in his affidavit that "I was under the impression that Michael Baker, Esq. was not the Plaintiff's attorney.... I therefore did not perceive a requirement to contact Mr. Baker, he was notified as a courtesy." Mar. 5, 2001 Jensen Aff., ¶ 13. This statement is curious in light of Jensen's written June 9, 2000 decision wherein he lists Michael Baker as "attorney for Mr. Van Patten."

mary judgment and Plaintiff's cross-motion for partial summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

In addressing the pending motions, the Court will apply the familiar standard for summary judgment, which need not be restated here. *Roman v. Cornell Univ.,* 53 F.Supp.2d 223, 232–33 (N.D.N.Y.1999); *Phipps v. New York State Dep't of Labor,* 53 F.Supp.2d 551 (N.D.N.Y.1999); *Riley v. Town of Bethlehem,* 44 F.Supp.2d 451, 458 (N.D.N.Y.1999).

### B. *Younger* Abstention

Defendants first contend that this Court should abstain from adjudicating Plaintiff's § 1983 claims based upon the Supreme Court's decision in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. *Younger* abstention is rooted in principles of comity and was designed to recognize a "proper respect for state functions." *New Orleans Public Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 2516, 105 L.Ed.2d 298 (1989) (quoting *Younger,* 91 S.Ct. at 750, 91 S.Ct. 746.) (*"NOPSI"*).

■ "Under *Younger* and its progeny, a federal court should abstain from exercising jurisdiction where three factors are present: (1) there is an ongoing state ... proceeding; (2) the claim raises important state interests; and (3) the state proceedings provide an adequate opportunity to raise the constitutional claims." *Schlagler v. Phillips,* 166 F.3d 439, 442 (2d Cir.1999).

### 1. Ongoing State Proceedings

Plaintiff never appealed Jensen's decision through a proceeding pursuant to N.Y.C.P.L.R. Art. 78, although he had the opportunity to do so. *Kirschner v. Klemons,* 225 F.3d 227, 234 (2d Cir.2000). As the Supreme Court has noted, "a party may not procure federal intervention by terminating the state judicial process ... foregoing the state appeal to attack the trial court's judgment in federal court." *NOPSI,* 109 S.Ct. at 2518–19. Because Plaintiff had the opportunity to present his constitutional claims to the state courts via a proceeding pursuant to N.Y.C.P.L.R. Art. 78, *Younger* and its progeny require that he have availed himself of these avenues of relief. *NOPSI,* 109 S.Ct. at 2518–19. Thus, the Court finds there were ongoing state court proceedings.

### 2. The Claim Raises Important State Interests

Plaintiff does not challenge whether the state has an important interest in regulating dogs.

### 3. Whether the State Proceedings Provide an Adequate Opportunity to Raise the Constitutional Claims

■ It would appear to have been futile for Plaintiff to have challenged Jensen's determination after the dog had been euthanized. A successful appeal would have been, in large part, meaningless. Notwithstanding this, the state courts, through an Article 78 proceeding challenging Jensen's determination, could have addressed any of Plaintiff's claims challenging the City's initial detention of Shadow, the procedures afforded Plaintiff during the course of the dangerous dog hearing, and the basis for Jensen's determination. Thus, to the extent Plaintiff seeks declaratory or injunctive relief regarding the City's seizure of dogs and the process it affords dog owners during the dangerous dog hearings, such claims are barred by *Younger.*[3]

**3.** Although Plaintiff could have challenged these actions in an Article 78 proceedings, it

In addition to seeking injunctive relief, Plaintiff seeks monetary damages. As the Second Circuit has stated:

> When money damages, as opposed to equitable relief, are sought, it is less likely that unacceptable interference with the ongoing state proceeding, the evil against which *Younger* seeks to guard, would result from the federal court's exercise of jurisdiction. Accordingly, we have held that abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical claims for declaratory and injunctive relief.... Accordingly, regardless of the inapplicability or applicability of any exception, we hold that *Younger* abstention is not appropriate with respect to [Plaintiff's] claim for money damages under § 1983 ... because it is a claim for money damages and not for declaratory or injunctive relief.

*Kirschner*, 225 F.3d at 238; *see Yamaha Motor Corp., USA v. Stroud*, 179 F.3d 598, 603–04 (8th Cir.1999) ("When monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages, the case should not be dismissed.").

Because Plaintiff is not challenging the constitutionality of the N.Y.Agric. & Mkts. Law or the Binghamton City Code (the "Code"), he is challenging Defendants' actions that deprived him of his right to judicial review, and he is seeking monetary damages, *Younger* does not require dismissal. Further, because there is no actual ongoing state court proceedings, there is no reason to stay this matter.

Also, as in *Kirschner*, "the other prerequisites for *Younger* abstention ... [are] not ... met ... because it is highly unlikely that [Plaintiff] could bring his § 1983 claim for money damages against [Defendants] in an Article 78 proceeding." 225 F.3d at 238. First, as previously discussed, the County Defendants likely would not have been proper parties to an Article 78 proceeding. Second, monetary damages in an Article 78 proceedings are only recoverable if they are incidental to the primary relief sought. *Id.* For the reasons articulated in *Kirschner*, the unavailability of money damages in an Article 78 proceeding precludes application of *Younger* abstention.

---

is not at all clear that the subsequent actions that led to Shadow's quick demise would have properly been part of such a proceeding. For example, an Article 78 proceeding ordinarily might challenge on due process grounds the manner in which a state agency afforded a petitioner a hearing. *See, e.g., Emes Heating & Plumbing Contractors, Inc. v. McGowen*, 719 N.Y.S.2d 342 (3d Dep't 2001). Looking at the Complaint, however, Plaintiff does not appear to dispute the City's original determination to detain Shadow, the manner in which the hearing before Jensen was held, or the grounds for Jensen's decision. Rather, Plaintiff is challenging Defendants' failure to afford him any time to seek meaningful review of Jensen's determination before dispatching his dog. It, thus, could be argued that Plaintiff raises an entirely new due pro-

cess claim separate and apart from any due process violations that may have occurred as a result of the proceedings leading up to and including the determination after the dangerous dog hearing. In fact, most of the actions at issue here were performed by Bugonian, an agent of Broome County who was not a party to the underlying proceedings; not the City, which was a party to the underlying proceedings. Thus, Plaintiff's instant claim likely constitutes a new cause of action that arose in the immediate aftermath of the hearing and would not have properly been a part of an Article 78 proceeding challenging the hearing itself. The Court need not make this determination, however, because, for the following reasons, *Younger* abstention does not apply to Plaintiff's other claims.

For these reasons, Defendants' motion for abstention is granted in part and denied in part. The Court will abstain from adjudicating any claims for declaratory or injunctive relief regarding the City's seizure of dogs or the manner in which the City affords hearings to dog owners. The Court will not abstain from entertaining Plaintiff's other claims.

## C. Plaintiff's Cross–Motion for Summary Judgment

Plaintiff moves for summary judgment contending that, as a matter of law, Defendants' immediate euthanization of Shadow deprived him of his property rights without adequate procedural protections because: (1) he was not provided with notice of Jensen's determination before Shadow was euthanized; and (2) he was not afforded a reasonable opportunity to contest Jensen's determination before his property (Shadow) was destroyed. Plaintiff also contends that Defendants euthanizing Shadow in the manner in which they did constitutes an unreasonable seizure as a matter of law.

### 1. Procedural Due Process

██ To prevail on his procedural due process claim, Plaintiff must demonstrate: (1) that he possessed a protected property interest; and (2) that he was deprived of that interest without due process. *McMenemy v. City of Rochester*, 2001 WL 306436, at (2d Cir. Mar.27, 2001).

### a. Property Right

██ The source of a property right is determined by looking to the relevant state law, which here is the law of the State of New York. *McMenemy.* Under New York law, a dog is property. *Mullally v. People*, 86 N.Y. 365 (1881) ("[The] definition of personal property is certainly comprehensive enough to include dogs.");

*People v. Gillespie*, 25 A.D. 91, 48 N.Y.S. 882, 883 (3d Dep't 1898). Thus, the Court finds that Plaintiff did have a protected property interest in Shadow.

### b. What Process is Due

██ Having found that Plaintiff had a protected property interest, the Court must next determine to what amount of legal process he was entitled. "In determining what process is due, a court must balance three factors: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " *McMenemy*, (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

### (1) The Private Interest Affected by the Official Action

The interest affected by Defendants' actions are clear. Plaintiff lost his pet, Shadow. Defendants destroyed his personal property. Although, on the one hand, pets are considered personal property and, as such, are replaceable, the fact of the matter is that they are property with personality. No two dogs are the same. Pets are capable of providing. invaluable love, friendship, and companionship— things that other types of personal property simply cannot provide. This has led to the familiar adage that "dogs are a man's best friend." In this regard, pets are distinguishable from what we normally consider as personal property. Thus, while we can buy another pet that may fill some of the voids caused by the loss of a pet,

there is no such thing as replacement. The Court, therefore, finds that Plaintiff has a significant interest in his dog.

### (2) Risk of an Erroneous Deprivation and the Probable Value of Additional Safeguards

The risk of immediately executing the hearing officer's order before allowing Plaintiff a reasonable opportunity to seek review, or a stay, of the decision is patent because the result was irreversible—Shadow's life was taken. For the following reasons, the Court finds that there is a significant risk of an erroneous deprivation here.

The relevant provisions of the Code provide that, when a law enforcement agent has probable cause to believe that an individual is harboring a vicious dog (as that term is defined in the Code), the law enforcement agent may seize the dog. Code § 4–23(d)(1). The mayor, or his designee, may then determine whether the dog is vicious within the meaning of the Code. Such a determination is made upon written notice to the dog's owner and after a hearing at which "all interested persons shall have the opportunity to present evidence on the issue of the dog's viciousness." Code § 4–23(d)(2). After the hearing, the mayor, or his designee, may order that the dog be humanely euthanized or order the dog to be returned to the owner with certain restrictions. *Id.* The Code specifically provides that "[a]ny person aggrieved by a decision of the hearing officer may appeal said decision through an Article 78 [proceeding]." *Id.* § 4–23(h).

It is clear from the comprehensive nature of the Code that it provides adequate legal process to avoid the risk of an erroneous deprivation. A dog owner is first afforded a hearing and then, if unsatisfied with the results of the hearing, may seek judicial review through a special proceeding. This provides adequate process of law. *Hellenic Amer. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 882 (2d Cir.1996), *cert. dismissed,* 521 U.S. 1140, 118 S.Ct. 15, 138 L.Ed.2d 1048 (1997). The problem here is the way Defendants executed this procedure by acting before he could appeal. In so doing, Plaintiff was deprived of rights provided by the Code and, arguably, by state law, and was otherwise deprived of due process of law. The Court will now address the deficiencies that resulted in Shadow's death in violation of Plaintiff's Fourteenth Amendment rights and demonstrate the high risk of an erroneous deprivation here.

First, the Code provides for a hearing by the mayor or his designee. Here, that person was Jensen. This is contrary to N.Y.Agric. & Mkts § 121, which provides for a hearing before "a municipal judge or justice." *See* N.Y.Agric. & Mkts § 124.[4] There is no evidence that Jensen was either.

Second, the hearing officer's determination does not state the reasons supporting his determination. In this instance, due process would require, at a minimum, a written statement of the decision that contains a summary of the evidence in support thereof. *See, e g., Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). There is no evidence of any such decision before the Court.[5]

---

**4.** The Binghamton Code may well violate N.Y.Agric. & Mkts Law 124, which provides that "no municipality shall vary, modify, enlarge or restrict the provisions of this article relating to identification, licensing, rabies vaccination and euthanization."

**5.** These first two matters pertain to issues Plaintiff should have brought in an Article 78 proceeding and, thus, for reasons previously discussed, are matters the Court must abstain from deciding. They are, however, illustra-

Third, and most importantly for present purposes, Plaintiff was deprived of his right to seek judicial review via an Article 78 proceeding. Technically speaking, Plaintiff *could* have pursued an Article 78 proceeding. If he had been successful, however, it would have been a hollow victory. No court order could revive Shadow. Defendants stripped Plaintiff of his right to an Article 78 proceeding by executing Shadow before Plaintiff had legally adequate notice of the hearing officer's determination and before he had reasonable time to take legal action to seek a stay of or challenge Jensen's order.

At the hearing, the hearing officer reserved decision. Later that day, he mailed his decision to Plaintiff and his attorney. Plaintiff's attorney did not receive the decision until the 12th, three days after Shadow's execution. Bugonian telephoned Plaintiff on the 9th, out of what she describes as courtesy, to advise him that Shadow was going to be euthanized within the next one and one-half hours. Then, sometime within the next one and one-half hours, Shadow was executed. Defendants' contention that Bugonian's telephone call to Plaintiff, and not his attorney, constituted adequate notice of the hearing officer's determination and that Plaintiff, a layman of the law, who just received the traumatic news that his dog was going to be euthanized,[6] should have had the wherewithal and legal prowess to seek a formal stay of the decision from Jensen himself or by filing an Order to Show Cause in a New York State Court with potentially only fifteen minutes (and certainly no more than one

and one-half hours) before the dog was to be euthanized,[7] is untenable.

Even crediting Hill's testimony that he personally served Plaintiff with a copy of the decision, a contention that is in dispute, the Court's conclusion would be the same. Plaintiff did not receive proper legal notice until his attorney received the hearing officer's determination. *See, e.g.,* FED.R.CIV.P. 5(b); N.Y.C.P.L.R. § 2103(b). This, of course, did not happen until it was too late. Moreover, in order to take advantage of the right to review via an Article 78 proceeding as provided in the Code, due process would require that Plaintiff be afforded more than a few hours to seek judicial review. By immediately euthanizing Shadow, Plaintiff was deprived of any potential benefit of pursuing an Article 78 proceeding and, thus, he was effectively denied the right to a meaningful review of the hearing officer's determination. Stated otherwise, Plaintiff was deprived of the ability to challenge whether Jensen's decision to euthanize Shadow was erroneous.

Fourth, judicial review may have changed the penalty imposed here. Upon reviewing the relevant portions of the N.Y.AGRIC. & MKTS. LAW and relevant case law, it appears that dogs are usually ordered to be destroyed only when they have attacked a human being or are repeat offenders. *People v. Noga,* 168 Misc.2d 131, 645 N.Y.S.2d 268 (2d Dep't 1996); *People v. Horvath,* 205 A.D.2d 927, 613 N.Y.S.2d 721 (3d Dep't 1994); *Brooks v. Hemingway,* 107 Misc.2d 190, 433 N.Y.S.2d 551 (Dist.Ct. Suffolk Cty 1980). There is no indication in the record before the Court that Shadow ever attacked a human or had

---

tive of the many deficiencies in the procedures afforded Plaintiff.

**6.** Bugonian admits that "Mr. Patten became very emotional and pleaded that I not do it and that I ask the Dog Commissioner not to have me do it." Bugonian Aff., ¶ 6.

**7.** In her affidavit, Bugonian states that she telephoned Plaintiff sometime after 4:30. Bugonian Aff., ¶ 6. Shadow was executed "between the hours of 4:45 and 6:00 p.m." *Id.,* ¶ 7.

prior run-ins with the law. The evidence before the Court further demonstrates that Shadow did not severely injure the victim dog. Thus, the penalty imposed here may have been erroneously severe. Allowing Plaintiff to pursue his right to review the penalty imposed by the hearing officer, as is contemplated by the Code, could have safeguarded against the loss of Shadow's life.

### (3) The Government's Interest

The Court does not question the government's interest in protecting the public from dangerous dogs. However, at the time of the hearing officer's determination, Shadow did not pose a threat to the public because he was incarcerated. Moreover, there would be little appreciable burden upon the government in allowing Plaintiff to pursue his right to commence an Article 78 proceeding. Although the government may experience increased occupancy in its dog shelters or increased costs for housing dogs during the pendency of an Article 78 proceeding, these costs are minimal in comparison to the alternative—a loss of life—and the monetary costs are reimbursed by the dog owner. Moreover, there is no reason that the government could not devise reasonable, low-cost alternatives to help alleviate these burdens such as, for example, passing the costs of housing and feeding the dog to the owner (which they do already), requiring the owner to keep the dog confined pending judicial review, and/or reducing the amount of time within which an aggrieved person may file an Article 78 proceeding.

Based on the above balancing of interests, the Court finds that Plaintiff was deprived of a property interest without due process of law. For reasons to be discussed *infra*, questions of fact remain as to which, if any, Defendants are liable for this constitutional deprivation.

### 2. Substantive Due Process

"Because the Fourth Amendment provides an explicit textual source of constitutional protection" and Plaintiff has brought a Fourth Amendment claim for the alleged unreasonable seizure of his dog, Plaintiff may not proceed under a substantive due process theory. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The substantive due process claim based on Defendants' destruction of Shadow must, therefore, be dismissed.

### 3. Fourth Amendment

The Fourth Amendment protects against unreasonable search and seizures. *Graham,* 490 U.S. at 395, 109 S.Ct. 1865. Without question, there was a meaningful interference with Plaintiff's possessory interests in Shadow. *Soldal v. Cook County, Illinois,* 506 U.S. 56, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992). Thus, the killing of Plaintiff's dog is a seizure within the meaning of the Fourth Amendment. *Fuller v. Vines,* 36 F.3d 65, 67–68 (9th Cir.1994), *cert. denied,* 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995). A seizure alone does not, of course, constitute a Fourth Amendment violation. *Soldal,* 113 S.Ct. at 543. The question is whether this seizure was reasonable under the circumstances. *Id.* Fourth Amendment claims are analyzed from an objective viewpoint and must take into consideration all relevant facts and circumstances. The Fourth Amendment generally requires a "careful balancing of government and private interests." *Soldal,* 506 U.S. 56, 113 S.Ct. 538, 549, 121 L.Ed.2d 450.

On the one hand, Shadow was euthanized pursuant to Jensen's Order after a hearing. On the other hand, there were no exigent circumstances necessitating

Shadow's immediate destruction (he was being detained and did not pose a threat to the public) and the execution was performed without adequate due process of law (the right to seek judicial review of Jensen's Order). *See Samuels v. Meriwether,* 94 F.3d 1163, 1167–68 (8th Cir. 1996). The Court, therefore, finds that triable issue of fact remain as to whether this seizure (the euthanization of Shadow) was unreasonable under the circumstances.

### 4. Liability

 Plaintiff's Complaint makes it clear that he is suing the City of Binghamton and the County of Broome for damages.[8] It is well-settled that municipalities may only be held liable under § 1983 for their official customs or policies. *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The evidence before the Court is that Jensen faxed his decision to Bugonian who immediately carried out its orders. There is insufficient evidence before the Court from which it may conclude, as a matter of law, that this occurred pursuant to an official policy or custom. Thus, questions of fact remain regarding whether the above-discussed constitutional deprivations were the result of an official policy or custom of either the City of Binghamton or Broome County.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion that the Court abstain from adjudicating this matter. The Court will abstain from adjudicating any claims challenging the City of Binghamton's initial seizures of dogs or the

procedures afforded dog owners during the hearings. The Court will adjudicate all other claims.

Plaintiff's substantive due process claim is DISMISSED. Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The Court finds that Plaintiff's procedural due process rights were violated as a matter of law. Questions of fact remain as to whether Defendants are liable for any such violations. In all other respects, Plaintiff's motion for summary judgment is DENIED.

**IT IS SO ORDERED**

---

8. This is because Plaintiff is suing the individual Defendants in their official capacities only. *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998).