FIRST DIVISION

March 7, 2005

No. 1-04-1647

MARY ANN ANZALONE, 
 
)    Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)    

v. )        No. 03 L 004338

)

CRAIG KRAGNESS and )

THE KRAGNESS ANIMAL HOSPITAL, LTD., ) Honorable

)    Barbara Disko,

Defendants-Appellees.            )    Judge Presiding.

JUSTICE GORDON delivered the opinion of the court:

This matter arose over the death of a cat belonging to plaintiff Mary Ann Anzalone.  The cat, Blackie, was boarded at the Kragness Animal Hospital, Ltd. (Kragness Animal Hospital), when she was attacked by another boarder, a rottweiler dog, and killed.  Plaintiff brought this action against defendants Craig Kragness, D.V.M. and the Kragness Animal Hospital for breach of bailment, negligence, breach of a fiduciary duty and intentional infliction of emotional distress, seeking $100,000 in damages plus costs and attorney fees.  The circuit court dismissed the count of intentional infliction of emotional distress with prejudice and struck the prayer for relief on the remaining counts.  The circuit court granted plaintiff leave to amend her first amended complaint to include a new prayer for relief, directing that the prayer for relief "specify [p]laintiff's claim for actual damages and *** not contain a prayer for attorney fees."  Rather than filing a second amended complaint, p
laintiff brought this appeal.  
For the reasons that follow, we reverse and remand
.

BACKGROUND

The first amended complaint
(footnote: 1) (hereinafter, complaint) 
was in four counts.  Count I sounded in bailment, count II in negligence, count III in breach of a fiduciary duty, and count IV in intentional infliction of emotional distress. 

The factual allegations common to all four counts are summarized as follows.  Plaintiff was a 44-year-old unmarried woman with no children.  She considered Blackie, her four-year-old female cat, a member of her family.  Plaintiff "loved and cared for Blackie, Blackie reciprocated that affection, and [plaintiff] cherished Blackie for the unconditional love and companionship she provided."  On June 7, 2002, plaintiff brought several cats, including Blackie, for boarding to her veterinary hospital, the Kragness Animal Hospital.  On June 19, 2002, a hospital employee let Blackie out of her cage and took her to a room for exercise.  The employee failed to securely close the room door.  At about the same time, the employee took a rottweiler dog to a nearby room.  The rottweiler ran into Blackie's room, attacked and killed her.

Plaintiff claimed that "[a]s a result of Blackie's death, [she] has suffered extreme distress evidenced by the facts that: she cried constantly following Blackie's violent death and continues to cry every time she thinks about it to this date; has lost sleep and continues to do so to this date; has recurring waking thoughts and nightmares in which she envisions Blackie, a 4-paw de-clawed cat, ripped apart by a rottweiler; has overwhelming feelings of guilt over the fact of Blackie's death as well as the terror and pain that Blackie suffered; has suffered headaches; has suffered extreme stress resulting in weight gain of approximately 40 pounds; as well as the loss of Blackie, the loss of Blackie's society and companionship, and financial losses."

Defendants moved to dismiss pursuant to 
section 2-615 of the 
Code of Civil Procedure (the Code)
 (735 ILCS 5/2-615 (West 2002)), arguing that under Illinois law, pets were classified as personal property, so that damages for 
emotional distress and loss of society associated with a pet's injury or death were not recoverable.  Defendants argued that the factors to be considered in order to measure damages for the death of a pet generally included the market value, longevity of the breed, and the pet's training, usefulness and desirable traits.  Defendants asserted that plaintiff's prayer for compensatory damages in excess of $100,000 was not based on the market value of Blackie or other permissible factors.  Defendants further argued that even if noneconomic damages were recoverable for the death of a pet, the allegations in plaintiff's complaint did not support recovery under the theories of bailment, negligence, breach of a fiduciary duty or intentional infliction of emotional distress.
  Lastly, pursuant to section 2-619, defendants moved to str
ike plaintiff's prayers for attorney fees as not recoverable on these facts.  

In opposition to defendants' motion to dismiss, plaintiff argued that she adequately alleged a set of facts which entitled her to relief.  Plaintiff further argued that defendants' motion must fail because a challenge to the valuation of damages is not proper in the context of a motion to dismiss or a motion to strike, where the test is whether the complaint alleged a set of facts sufficient to support all the elements of the cause of action.  Plaintiff asserted that she adequately alleged actual damages due to the loss of Blackie in that she stated that she was unmarried, had no children, considered Blackie to be a member of her family, loved and cared for Blackie, and Blackie reciprocated that affection.  Lastly, plaintiff asserted that she suffered economic damages in the amount she spent on food and other care of Blackie before her untimely demise.

The circuit court 
found that plaintiff failed to state a cause of action for intentional infliction of emotional distress and dismissed that count with prejudice.
(footnote: 2)  No such finding was made with respect to the negligence and bailment counts.  Moreover, the court affirmatively upheld the count charging breach of a fiduciary duty.  Nevertheless, t
he court struck the first amended complaint solely for its failure to adequately plead damages.  
The court further stated that it was allowing plaintiff one further attempt to state her claim for damages and, should she fail to do so, the matter would be transferred to the Municipal Division.  The court's order states, in pertinent part:

"1. Defendants' motion to strike [p]laintiff's prayer for relief is granted.

2. [The intentional infliction of emotional distress count] is dismissed with prejudice.

3. Plaintiff is given leave to file a [s]econd [a]mended [c]omplaint on or before March 24, 2004.  The prayer for relief on the remaining counts will specify [p]laintiff's claim for actual damages and will not contain a prayer for attorney fees."

Plaintiff did not file a second amended complaint.  Instead, on April 23, 2004, plaintiff filed a motion to reconsider the dismissal of her complaint for failure to adequately allege damages.
  Plaintiff asserted that she properly pled actual damages, in that she alleged that defendants utterly destroyed her property, namely, Blackie, who was valuable to her.  Plaintiff moved the court to allow her to proceed with her action.  The circuit court denied plaintiff's motion and ruled that there was no just reason for delay of enforcement or appeal of its final judgment.  This appeal followed.

ANALYSIS

Plaintiff contends that the circuit court erred in dismissing her complaint for failure to adequately allege damages.  Plaintiff asserts, as she did below, that 
the challenge to the 
valuation 
of damages 
is not fatal to her cause of action, as she adequately alleged the 
existence 
of damages.  We agree.  

A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint by alleging defects appearing on its face.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 484, 
639 N.E.2d 1282, 1289
 (1994).  Such a motion should be granted if the complaint does not allege sufficient facts to state a cause of action.  
Bianchi v. Savino Del Bene International Freight Forwarders, Inc.
, 329 Ill. App. 3d 908, 918, 
770 N.E.2d 684, 692-93
 (2002).  A dismissal must be vacated if there is any possibility of recovery on the facts alleged.  
Empire Home Services, Inc. v. Carpet America, Inc.
, 274 Ill. App. 3d 666, 670, 
653 N.E.2d 852, 855
 (1995).  Our review on appeal is generally 
de novo
.  
Unterschuetz v. City of Chicago
, 346 Ill. App. 3d 65, 68, 
803 N.E.2d 988, 991
 (2004).

Section 2-604 of the Code provides, in pertinent part:

"
Every complaint and counterclaim shall contain specific prayers for the relief to which the pleader deems himself or herself entitled 
***. 
***  Prayers for relief which the allegations of the pleadings do not sustain may be objected to on motion or in the answering pleading."
  735 ILCS 5/2-604 (West 2002).

Because the dismissal of the intentional infliction of emotional distress count is not at issue on appeal, we will focus on plaintiff's remaining theories of recovery.  Therefore, we first address whether plaintiff may recover for the "
loss of Blackie, the loss of Blackie's society and companionship, and financial losses" under her remaining theories.
  Apparently, plaintiff draws an analogy between her loss of Blackie and one's loss of a child.  We note that the right to recover damages for the loss of companionship of a child is a creature of statute, namely, the Wrongful Death Act (740 ILCS 180/0.01 
et seq
. (West 2004)), and not of the common law.  See 
Dralle v. Ruder
, 124 Ill. 2d 61, 529 N.E.2d 209 (1988).  In comparison, the right to recover for the loss of companionship of a spouse is recognized both pursuant to the Wrongful Death Act (see 
Elliott v. Willis
, 92 Ill. 2d 530, 442 N.E.2d 163 (1982)) and at common law for loss of consortium resulting from nonfatal injuries to the spouse (see 
Dini v. Naiditch
, 20 Ill. 2d 406, 170 N.E.2d 881 (1960)).  However, no Illinois statute provides for a "wrongful death"-type cause of action for the negligent killing of a pet,
(footnote: 3) and in the eyes of common law, 
a pet "is an item of personal property" (
Jankoski v. Preiser Animal Hospital, Ltd.
, 157 Ill. App. 3d 818, 820, 510 N.E.2d 1084, 1086 (1987); see also 
Sentell v. New Orleans & Carrollton R.R. Co.
, 166 U.S. 698, 700, 41 L. Ed. 1169, 1170, 17 S. Ct. 693, 694 (1897) ("[b]y the common law, as well as by the law of most, if not all, the States, dogs are so far recognized as property that an action will lie for their conversion or injury")
).  
This view of a pet as an item of personal property still prevails in almost all jurisdictions
, although deemed outdated by animal law scholars.  See 
M. Livingston, 
The Calculus of Animal Valuation: Crafting a Viable Remedy
, 82 Neb. L. Rev. 783, 787-803 (2004); see also Annotation, 
Damages for Killing or Injuring Dog
, 61 A.L.R. 5th 635 (1998).  Because the common law did not recognize claims based on the wrongful death of a human, thus necessitating a statutory remedy, the courts have been reluctant to create a new common law cause of action for the wrongful death of a pet and defer to the legislature the decision to fashion the appropriate cause of action and provide guidance as to the appropriate measure of noneconomic damages.  M. Livingston, 82 Neb. L. Rev. 
at 793-94.

Under the treatment of a pet's wrongful death as the destruction of personal property, the cause of action is typically framed in terms of general negligence or bailment.  See 
Koester v. VCA Animal Hospital
, 244 Mich. App. 173, 175-76, 624 N.W.2d 209, 211 (2000) (negligence committed in the care of a pet); 
Brousseau v. Rosenthal
, 110 Misc. 2d 1054, 1054-55, 443 N.Y.S.2d 285, 285-86 (N.Y. Civ. Ct. 1980) (cited with approval in 
Jankoski
 (boarding a pet at a kennel constitutes bailment for mutual benefit)).  Plaintiff here did both, apparently in the alternative.  Also, as noted, the complaint contains a count of breach of a fiduciary duty.  We note that the existence of a fiduciary duty on these facts may be questionable.  However, we will pass on this issue because we agree with the circuit court that the complaint sufficiently alleges a 
prima facie
 cause of action in both general negligence and bailment.  

Earlier Illinois cases provided for damages based on a pet's fair market value, as evidenced by the pet's qualities and its commercial value, and for the loss of its services.  See 
Spray v. Ammerman
, 66 Ill. 309 (1872); accord 
Demeo v. Manville
, 68 Ill. App. 3d 843, 846, 386 N.E.2d 917, 918 (1979).  This method of computing damages does not account for the instances where the pet has no market value.  See Restatement (Second) of Torts 
§911
, Comment 
e
, at 474 (1965).  The Restatement and most jurisdictions take a position that in such cases it would be unjust to limit the damages to the fair market value and, instead, use the so-called "value to the owner" (also known as "actual value to the owner" or "actual value") as the measure of damages.  See Restatement (Second) of Torts 
§911
, Comment 
e
, at 474 (1965).  The Restatement notes that where the subject matter cannot be replaced, the measure of the "value to the owner" is left largely to the discretion of the trier of fact.  See Restatement (Second) of Torts 
§912
, Comment 
c
, at 481 (1965). 
 

Jankoski
, this court's more recent opinion on the subject of pet valuation, addressed the calculation of damages in a wrongful death of a pet with no fair market value and adopted the latter approach to the valuation of a pet as a unique item of personal property:

"[T]he proper basis for assessing compensatory damages in such a case is to determine the item's 'actual value to [the owner,]' *** [who] is 'entitled to demonstrate its value to him by such proof as the circumstances admit.' 
"
  
Jankoski
, 157 Ill. App. 3d at 820
, 510 N.E.2d at 1086, quoting 
Long v. Arthur Rubloff & Co.
, 27 Ill. App. 3d 1013, 1026, 327 N.E.2d 346, 355 (1975).

Jankoski
 thus held that the value to the owner may "
include some element of sentimental value in order to avoid limiting the [owner] to merely nominal damages."  
Jankoski
, 157 Ill. App. 3d at 821, 510 N.E.2d at 1087
.
  
However, 
Jankoski
 acknowledged that the "damages in such cases, while not merely nominal, are severely circumscribed.
"  
Jankoski
, 157 Ill. App. 3d at 821, 510 N.E.2d at 1087
.
   

On the other hand, 
Brousseau
, upon which 
Jankoski
 relied, specifically considered the "loss of companionship," although not as an independent cause of action, but as an element of damages in the negligent death of a widow's eight-year-old dog.  
Brousseau
, 110 Misc. 2d at 1055-57, 443 N.Y.S.2d at 286-87.  However, notwithstanding an acknowledgment of the loss of companionship as an element of damages, recovery in the death of a pet is geared toward compensation for the loss of personal property and, consequently, the emotional increment in that loss, while recognized, has been severely restricted.  See 
Jankoski
, 157 Ill. App. 3d at 821, 510 N.E.2d at 1087
; 
Restatement (Second) of Torts 
§911
, Comment 
e
, at 475 (1965) (recovery in the death of a pet is premised upon a common law theory of a pet as an item, albeit unique, of personal property and, thus, is tied to the maxim that compensatory damages are not given for emotional distress caused merely by the loss of things).  It has been said that the courts allow recovery for the emotional component through the use of legal fiction that the owner is not being directly compensated for the emotional harm but, rather, for the "value to the owner," which includes an element of the owner's feelings for the pet.  1 D. Dobbs, Remedies §5.15(3), at 899-900 (1993).  In employing that fiction, the courts are "denying in one breath that *** emotional harm damage can be recovered, but awarding *** damages for the personal value to the owner, specifically including the owner's feelings as a part of this value."  1 D. Dobbs, Remedies §5.15(3),
 at 899-900
.  
Brousseau
 is seen as having employed that legal fiction to stretch the concept of "value to the owner" to encompass the owner's feelings of loss of companionship of the pet
. 
 
1 D. Dobbs, Remedies §5.15(3),
 at 899-900.  Because the "value to the owner" is a substitute for the fair market value, it produces only small recovery in the loss of a nonpedigreed pet.  
M. Livingston, 82 Neb. L. Rev. at 789-90.  For instance, the 
Brousseau
 court awarded the plaintiff $550 plus costs, despite having found that the plaintiff, a retired widow who lived alone, relied heavily on her well-trained watch dog, which was her sole and constant companion, never went out alone at night without his protection, and, after the dog's death, was burglarized, which would not have happened had the dog been alive.  
Brousseau
, 110 Misc. 2d at 1055-57, 443 N.Y.S.2d at 286-87.  

None of the foregoing cases questioned the right to maintain a cause of action under the theory of destruction of personal property.  It is well established that "[i]t is not necessary for the maintenance of an action for killing a [pet], that it should be shown to be of any pecuniary value.  It is for the jury to [be the] judge of the value."  
State v. M'Duffie
, 34 N.H. 523, 526 (1857).  As discussed, there is no formula for computing the value of the pet to her owner.  See also 
Brousseau
, 110 Misc. 2d at 1056, 443 N.Y.S.2d at 287; 1 D. 
Dobbs, Remedies 
§5.16(3)
, at 907
 (" 'Value to the owner' cannot yield any dollar figure by computation, by analysis or by empirical investigation")
.  
Professor Dobbs commented that "[s]ince value to the owner is stated as a measure [of damages] but cannot function as one, all this is very unsatisfactory in theory."  
1 D. Dobbs, Remedies 
§5.16(3),
 at 907.  
Despite that fact, the "value to the owner" as a measure of damages is widely used in small cases 

"in which detailed accounting evidence would be unwelcome as too elaborate for the modest occasion.  Perhaps the value to the owner rule suffices to invite some help from the jury and at the same time to provide a tool for control if the award becomes too generous; if so, maybe no more should be demanded."  
1 D. Dobbs, Remedies 
§5.16(3),
 at 907.  

It appears that defendants object to plaintiff's lack of specificity in alleging Blackie's value to her.  While at trial the plaintiff bears the burden of providing evidence which affords some reasonable basis for ascertaining the "value to the owner" so as to enable a trier of fact to exercise his or her judgment (
Long
, 27 Ill. App. 3d at 1026, 327 N.E.2d at 355),
 we find no such requirement under Illinois law with respect to pleading damages.  Granted, the amount of $100,000 claimed by plaintiff as damages is excessive under the existing precedent; nevertheless, that is not a proper basis for dismissing the complaint.  Until now, there has been only one case in this jurisdiction, namely, 
Jankoski
, purporting to discuss the "value to the owner" as a measure of damages in the loss of a pet.  Consequently, it would be inappropriate to dismiss the complaint merely because the plaintiff's prayer for relief was deemed extravagant.  See, 
e.g.
, 
Cannell v. Medical & Surgical Clinic, S.C.
, 21 Ill. App. 3d 383, 386, 315 N.E.2d 278, 280-81 (1974) (excesses in the prayer do not make the complaint defective); 
Parker v. Gray
, 317 Ill. 468, 472, 148 N.E. 323, 325 (1925) (a general prayer for relief is sufficient to support an order warranted by the facts alleged).

We recognize that, on remand, a proper division assignment in the circuit court may depend upon whether the damages exceed a certain dollar amount.  See Cook Co. Cir. Ct. G.O. 1.2 (eff. July 12, 2000).  However, the circuit court is free to make this assessment in the exercise of its discretion regardless of the formal 
ad damnum
 set forth in the prayer for relief and, if warranted, transfer the action to the appropriate division.  See Cook Co. Cir. Ct. G.O. No. 1.3(c) (eff. August 1, 1996).  

For the reasons set forth above, we reverse the judgment of the circuit court and remand the matter for further proceedings consistent with this opinion.

Reversed and remanded.

CAHILL, P.J., and O'MALLEY, J., concur.

FOOTNOTES
1:
Plaintiff's original complaint was dismissed without prejudice for substantially the same reasons as discussed below.

2:
No appeal is taken from the dismissal of the intentional infliction of emotional distress count.

3:
As distinguished from an action pursuant to the Humane Care for Animals Act (510 ILCS 70/16.3 (West 2002)), which allows damages for injury or death of pet subjected to intentional acts of aggravated cruelty or torture, or an action pursuant to the Assistance Animal Damages Act (740 ILCS 13/1 
et seq
. (West 2002)) for damages to an animal trained to assist a physically impaired person.