[No. A128296. First Dist., Div. One. May 31, 2011.]

KEVIN KIMES, Plaintiff and Appellant, v.
CHARLES GROSSER et al., Defendants and Respondents.

COUNSEL

Law Offices of Michael T. Morrissey and Michael T. Morrissey for Plaintiff and Appellant.

Cholakian & Associates, Kevin K. Cholakian and Colin Hatcher for Defendants and Respondents.

OPINION

MARCHIANO, P. J.—A defendant neighbor allegedly shot plaintiff's pet cat. To save the cat's life, plaintiff incurred substantial bills. The trial court dismissed the case on the grounds that plaintiff would be unable to prove the value of the cat exceeded the costs of "repair." In this appeal, we are called upon to determine what damages can be awarded for a wrongful injury to a pet animal with little market value under these circumstances. We hold that the owner can recover the costs of care of the pet attributable to the injury if the costs are found to be reasonable and necessary, and punitive damages if the injury is found to be intentional. Based on these conclusions, we reverse the judgment dismissing the case.

## I. BACKGROUND

Plaintiff Kevin Kimes alleges as follows: His pet cat Pumkin was shot with a pellet gun on October 28, 2005, while perched on a fence between his property and that of defendants Charles Grosser et al. Emergency surgery costing $6,000 saved Pumkin's life, but left Pumkin partially paralyzed, and plaintiff incurred an additional $30,000 in expenses caring for Pumkin because of the injury. Plaintiff contends the shot that wounded Pumkin was fired from defendants' backyard, and defendants Charles or Joseph Grosser were responsible for the "willful[] and malicious[]" shooting.

Plaintiff filed this suit to recover amounts paid for Pumkin's care as a result of the shooting, and punitive damages.[1] Defendants filed motions in limine to exclude evidence of plaintiff's expenses caring for Pumkin, a cat they described as "an adopted stray of very low economic value," on the theory that their liability was limited to the amount by which the shooting reduced Pumkin's fair market value. When the court granted the motions at the outset of the trial, plaintiff declined to proceed, effectively conceding that Pumkin had no market value that justified the expenses of trial. Plaintiff's

---

[1] Plaintiff is not seeking damages for emotional distress.

appeal is from the judgment of dismissal entered on his failure to prosecute. (Code Civ. Proc., § 583.410.)

## II. DISCUSSION

Dismissals under Code of Civil Procedure section 583.410 are generally reviewed for abuse of discretion (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 429 [41 Cal.Rptr.2d 362, 895 P.2d 469]), but this appeal raises issues of law as to the damages recoverable for injury to a pet like Pumkin, which are subject to our independent review (see *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278]).

Defendants' motions in limine were based primarily on Judicial Council of California Civil Jury Instructions (Spring 2011 ed.) CACI No. 3903J, and the decision in *McMahon v. Craig* (2009) 176 Cal.App.4th 1502 [97 Cal.Rptr.3d 555] (*McMahon*).

■ Pets are considered property of their owners (see, e.g., *Dreyer v. Cyriacks* (1931) 112 Cal.App. 279, 284 [297 P. 35]; *Roos v. Loeser* (1919) 41 Cal.App. 782, 784 [183 P. 204]), and CACI No. 3903J addresses the damages that can be recovered for injury to personal property. The instruction indicates that the owner is entitled to recover the lesser of (1) the diminution of the property's market value caused by the injury, or (2) the reasonable cost of repairing the property. (See, e.g., *Hand Electronics, Inc. v. Snowline Joint Unified School Dist.* (1994) 21 Cal.App.4th 862, 870 [26 Cal.Rptr.2d 446].) The instruction states that, if the property "cannot be completely repaired, the damages are the difference between its value before the harm and its value after the repairs have been made, plus the reasonable cost of making the repairs. The total amount awarded must not exceed the [property's] value before the harm occurred."

In the *McMahon* case, the plaintiff asserted various causes of action, including veterinary malpractice, after her dog died while in the defendants' care. The plaintiff sought damages for loss of the dog's companionship under Civil Code section 3355, which provides: "Where certain property has a peculiar value to a person recovering damages for deprivation thereof, or injury thereto, that may be deemed to be its value against one who had notice thereof before incurring a liability to damages in respect thereof, or against a willful wrongdoer." The court ruled that loss of the pet's companionship was not compensable, noting that damages were also unavailable for the lost affection and society of a parent or child. (*McMahon, supra*, 176 Cal.App.4th at p. 1519.) The court held that "[p]eculiar value under Civil Code section 3355 refers to a property's unique economic value, not its sentimental or

emotional value." (*Id.* at p. 1518.)[2] In the case of a pet, " 'peculiar value' . . . refer[s] to special characteristics, which increase the animal's monetary value, not its abstract value as a companion to its owner." (176 Cal.App.4th at p. 1518.)[3]

██ Based on the foregoing authorities, defendants argued that plaintiff could recover no more than Pumkin's economic value, and that evidence of the expenses of caring for Pumkin should be excluded as "completely irrelevant to this case." In personal property cases, the plaintiffs are entitled to present evidence of the cost of repairs even in cases where recovery is limited to the lost market value of property. (*Pfingsten v. Westenhaver* (1952) 39 Cal.2d 12, 24 [244 P.2d 395].) The cost of repairs constitutes a prima facie measure of damages, and it is the defendant's burden to respond with proof of a lesser diminution in value. (*Ibid.*) However, it is not disputed that the cost of "repairing" Pumkin exceeded Pumkin's market value. Thus, any error in granting the motions in limine on the ground that Pumkin had negligible market value was harmless if that value capped plaintiff's recovery.

As we now explain, the rule in CACI No. 3903J has no application in this case to prevent proof of out-of-pocket expenses to save the life of a pet cat.

Rules regarding damages for injury to property having no market value were set in *Willard v. Valley Gas & Fuel Co.* (1915) 171 Cal. 9 [151 P. 286] (*Willard*).[4] In that case, the plaintiffs' home and its contents were destroyed in a fire caused by the defendant's negligence. The court held that the plaintiffs were properly allowed to testify to the value, to them, of property they lost that had no market value. The property included "certain scrap books and other data which [Mr. Willard] had used and was accustomed to use in his occupation as a writer. Some of these contained the results of collecting clippings during many years." (171 Cal. at pp. 14–15.) The defendant argued that section 3355 provided the measure of damages, but the court concluded that section 3355 did not apply because it "deals with property which has a market value and also a peculiar value to the owner and not with property having no market value." (*Willard, supra,* at p. 15.) The case was instead governed by section 3333, which states: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

---

[2] Unless otherwise indicated, subsequent statutory references are to the Civil Code.

[3] Plaintiff is not seeking loss of companionship, unique noneconomic value, or the emotional value of the cat, but rather the costs incurred as a result of the shooting.

[4] *Willard* was disapproved on another ground in *Showalter v. Western Pacific R. R. Co.* (1940) 16 Cal.2d 460, 465–467 [106 P.2d 895].

The *Willard* court, quoting an out-of-state case, acknowledged " 'it may be that no rule which will be absolutely certain to do justice between the parties can be laid down' " for property without market value, but " 'it does not follow from this, nor is it the law, that the plaintiff must be turned out of court with nominal damages merely.' " (*Willard, supra,* 171 Cal. at p. 15.) Under this reasoning, where the property has no market value, the general rule limiting recovery to the loss of that value cannot apply, because it would invariably preclude any recovery. In such cases, the property's value " 'must be ascertained in some other rational way, and from such elements as are attainable.' " (*Id.* at p. 16.) In *Willard,* "[i]t [was] clear that the [lost] scrap books could have no market value but that they might be of great value to a literary man. It was therefore proper for Mr. Willard to testify regarding their value to him." (*Id.* at p. 15.)

In *Zvolanek v. Bodger Seeds, Ltd.* (1935) 5 Cal.App.2d 106 [42 P.2d 92] (*Zvolanek*), a case applying *Willard,* experimental varieties of sweet peas grown by the plaintiff were damaged in flooding caused by the defendant's negligence. The plaintiff hoped to produce sufficient quantities of the sweet peas to make "seed for market uses," but the sweat peas "had not reached the stage where any market value had attached" when they were damaged. (*Id.* at p. 108.) The court held that the plaintiff was properly permitted, consistent with *Willard,* to establish the value of the sweet peas with testimony "as to the amount of ground space occupied by these special varieties, as to the method of producing them as hybrids by means of a cross-pollination, as to the manner of raising them, the amount of time expended during the preceding years from first cross-pollination to date, the value of the time so expended, [and] the rental value of the land used for producing such specialties . . . ." (*Ibid.*) The court rejected the defendant's argument that this testimony as to the "elements of damage" was "too remote and speculative to sustain the judgment of $1,000 entered herein." (*Ibid.*) Computation of the value of time expended on the project more than justified the damages awarded. (*Id.* at p. 110; see also *Robinson v. U.S.* (E.D.Cal. 2001) 175 F.Supp.2d 1215, 1231, 1232–1233 [damages for destruction of property with no market value must be "rationally determined"; "the valuation of those items cannot be based on sentiment, rather some logical framework must be used"].)

In this case, plaintiff is not plucking a number out of the air for the sentimental value of damaged property; he seeks to present evidence of costs incurred for Pumkin's care and treatment by virtue of the shooting—a "rational way" of demonstrating a measure of damages apart from the cat's market value. (*Willard, supra,* 171 Cal. at p. 16.) That evidence is admissible as proof of plaintiff's compensable damages, and the trial court erred in granting the motions to exclude it. (See also Evid. Code, § 823 ["the value of

property for which there is no relevant, comparable market may be determined by any method of valuation that is just and equitable"].) Plaintiff is entitled to have a jury determine whether the amounts he expended for Pumkin's care because of the shooting were reasonable.

Other states have found a similar measure of damages. In *Zager v. Dimilia* (N.Y.App. Term., 1988) 138 Misc.2d 448 [524 N.Y.S.2d 968, 970], the court determined that a "proper measure of damages in a case involving injury suffered by a pet animal is the reasonable and necessary cost of reasonable veterinary treatment. This approach is supported by case authorities and legal commentators. [Citations.] Long ago one legal scholar articulated the rationale for this rule: '[I]n cases of injury to animals . . . the plaintiff ought to recover for expenses reasonably incurred in efforts to cure them . . . . The law would be inhuman in the tendency if it should prescribe a different rule . . . since it would then offer an inducement to the owner to neglect its sufferings.' [Citation.] [¶] . . . [H]owever, the treatment must be reasonable in light of the animal's injuries, condition and prognosis. [¶] The burden of establishing both the reasonableness of the treatment and its cost lies with plaintiff. [Citations.] . . ."

Also persuasive is the decision in *Burgess v. Shampooch Pet Industries, Inc.* (2006) 35 Kan.App.2d 458 [131 P.3d 1248], where the plaintiff's 13-year-old Yorkshire terrier suffered a dislocated hip during an "ill-fated grooming [session]" with the defendant (*id.,* 131 P.3d at p. 1249). The court affirmed a damage award of $1,308.89 for the cost of the dog's successful hip surgery, including "x-rays, blood work-up, anesthesia, intravenous fluids, sutures, and pain medications" (*ibid.*), based on findings that the "veterinary care and treatment were necessary and that the costs were reasonable and customary" (*id.* at p. 1253). The reasonable cost of care was a "practical, common-sense . . . measure of damages" when a pet with "no discernable market value" was injured. (*Id.* at p. 1252; see also Johns, Cal. Damages: Law and Proof (5th ed. 2010) Property Damage, § 6.23, p. 6-32 [owner of an animal wrongfully injured may recover, in addition to lost market value, "other special damages for items such as veterinarian fees, medical bills, transportation costs, and other special expenses incurred as a proximate result of the defendant's tort"]; Annot., Damages for Killing or Injuring Dog (1998) 61 A.L.R.5th 635, 668 [cases permitting recovery of veterinary expenses].)

■ Under section 3333 plaintiff may present evidence of the bills incurred to save the cat's life and is entitled to recover the reasonable and necessary costs caused by someone who wrongfully injured the cat. Defendants are entitled to present evidence why the costs were unreasonable under the circumstances.

In addition to the reasonable costs of care occasioned by the shooting, plaintiff can recover punitive damages on a showing that the shooting was willful. (§ 3340 ["[f]or wrongful injuries to animals being subjects of property, committed willfully or by gross negligence, in disregard of humanity, exemplary damages may be given"].)

## III. DISPOSITION

The judgment of dismissal is reversed.

Margulies, J., and Dondero, J., concurred.