[No. B231534. Second Dist., Div. Two. Oct. 23, 2012.]

ELISEO MARTINEZ, JR., et al., Plaintiffs and Appellants, v.
ENRIQUE ROBLEDO, Defendant and Respondent.

[No. B231545. Second Dist., Div. Two. Oct. 23, 2012.]

MARGARET WORKMAN, Plaintiff and Appellant, v.
STEPHEN E. KLAUSE et al., Defendants and Respondents.

COUNSEL

Haney Torbett, Haney, Roderick, Torbett & Arnold and Steven H. Haney for Plaintiffs and Appellants.

Matthew Liebman; Caldwell Leslie & Proctor and David Zaft for Animal Legal Defense Fund as Amicus Curiae on behalf of Plaintiffs and Appellants.

Veatch Carlson, Mark A. Weinstein and Peter H. Crossin for Defendant and Respondent Enrique Robledo.

Wallace, Brown & Schwartz and George M. Wallace for Defendants and Respondents Stephen E. Klause and Arcadia Small Animal Hospital.

OPINION

**DOI TODD, J.**—The consolidated appeals in these two cases present the same legal issue: What is the measure of damages for the wrongful injury of a pet? We hold that a pet owner is not limited to the market value of the pet and may recover the reasonable and necessary costs incurred for the treatment and care of the pet attributable to the injury. Accordingly, we reverse the stipulated judgments and remand the cases for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs in both cases are represented by the same attorneys, but the parties and facts are otherwise unrelated.

Eliseo Martinez, Jr., individually and as guardian ad litem for minors Eliseo Martinez III, Russell Eric Martinez, and Arlene Gonzalez (collectively Martinez) alleged the following: On the morning of February 5, 2009, Martinez's family dog, Gunner, a two-year-old German shepherd, got loose from his yard and entered the property next door belonging to respondent Enrique Robledo. At the time, the neighbors were involved in a dispute over a hedge and were not on good terms. Gunner and Robledo's dog began

barking at each other, but were separated by a gate and incapable of physical contact. Robledo shot and wounded Gunner. A veterinarian later had to amputate Gunner's right rear leg. Martinez sued Robledo for negligence and conversion, seeking recovery of $20,789.81 in veterinarian bills in addition to punitive damages.[1]

Margaret Workman alleged the following: In December 2008 she took Katie, her nine-year-old golden retriever, to respondent Stephen E. Klause, a veterinarian with respondent Arcadia Small Animal Hospital, for surgery to remove a small liver lobe. During the procedure, Klause nicked and cut Katie's intestine, causing internal bleeding, and left a piece of surgical gauze inside her body. Klause did not disclose what had happened. Workman was charged $4,836.16 for the procedure. Almost immediately, Katie began vomiting blood, exhibited signs of pain and developed internal bleeding. Workman took Katie to the Animal Emergency Referral Center for emergency surgery. The center saved Katie's life by stopping the bleeding and removing remnants of the gauze, which had begun to dissolve and cause infections. The center billed Workman $37,766.06. When Workman confronted Klause, he offered to return the $4,836.16 she had paid him, but refused to pay the emergency bills. Workman sued for negligence and unfair business practices (Bus. & Prof. Code, § 17200).

In both cases, respondents filed motions in limine regarding the issue of damages. In Martinez's case, Robledo sought to limit evidence of damages to Gunner's market value. In Workman's case, the respondents sought to preclude evidence purporting to show that Katie had a "peculiar" or "unique" value. In both cases, after the trial courts had ruled that the measure of damages would be limited to the market value of the dogs, the parties entered into stipulated judgments for the purpose of appealing the damages issue. The parties stipulated that the market value of each dog was $1,000, that judgments would be entered in favor of appellants in this amount, and that appellants would not seek execution of the judgments while the appeals were pending.[2]

---

[1] Robledo claims he acted in self-defense when Gunner charged at him. In reply, Eliseo Martinez asserts that he and his wife were criminally charged and tried for having a vicious dog but were acquitted. These facts, however, are irrelevant for purposes of this appeal and we do not address them.

[2] A judgment entered pursuant to a stipulation is ordinarily not appealable, but an exception exists where consent was given merely to facilitate an appeal and the judgment constitutes a final disposition of all claims. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1430 [77 Cal.Rptr.2d 574].) Additionally, while a particular *amount* of damages is an issue of fact, the proper *measure* of damages is a question of law subject to de novo review. (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 691 [21 Cal.Rptr.3d 732].)

## DISCUSSION

*Summary of Contentions*

Appellants contend that pets are and should be treated as fundamentally more significant than mere personal property and that the appropriate measure of damages for an owner whose pet is wrongfully injured should be the reasonable and necessary costs incurred for the pet's care and treatment. They argue that damages should not be limited to the market value of the animal. Appellants rely on *Kimes v. Grosser* (2011) 195 Cal.App.4th 1556 [126 Cal.Rptr.3d 581] (*Kimes*) (discussed below) and Civil Code section 3333, which provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."[3]

Respondents contend that because domestic animals are considered the personal property of their owners (Civ. Code, § 655; Pen. Code, § 491 ["Dogs are personal property, and their value is to be ascertained in the same manner as the value of other property."]), the appropriate measure of damages for wrongful injury to a pet should be the same as that for other personal property, as set forth in CACI No. 3903J and the supporting cases. CACI No. 3903J provides that the measure of damages for injury to personal property is either the difference in market value immediately before and after the injury, or the cost of repairs, whichever is less. The instruction also provides that if the property "cannot be completely repaired, the damages are the difference between its value before the harm and its value after the repairs have been made, plus the reasonable cost of making the repairs. The total amount awarded must not exceed the [property]'s value before the harm occurred." (See *Smith v. Hill* (1965) 237 Cal.App.2d 374, 388 [47 Cal.Rptr. 49]; *Hand Electronics, Inc. v. Snowline Joint Unified School Dist.* (1994) 21 Cal.App.4th 862, 870 [26 Cal.Rptr.2d 446].)

*Kimes Case*

In *Kimes, supra*, 195 Cal.App.4th 1556, which was decided after the appeals were filed here, Division One of the First District was called upon to address the same issue confronting us: What damages can be awarded for the wrongful injury to a pet with little to no market value? (*Id.* at p. 1558.) In *Kimes*, the owner of an adopted stray cat sued his neighbors alleging they

---

[3] Appellants are not seeking to recover damages for sentimental value or loss of companionship, only economic damages in the form of veterinarian bills that exceed their pets' market value.

willfully shot the cat with a pellet gun. The cat underwent lifesaving emergency surgery costing $6,000, which left the cat partially paralyzed. The cat's owner incurred an additional $30,000 in caring for the cat due to the injury, and sought to recover amounts paid for the cat's care, plus punitive damages. (*Ibid.*) After the trial court granted the defendants' motions in limine to exclude evidence of the expenses in caring for the cat, the plaintiff dismissed his suit, effectively conceding the cat had no market value that justified the expenses of trial. (*Ibid.*) The appellate court reversed the judgment of dismissal and held that "the owner can recover the costs of care of the pet attributable to the injury if the costs are found to be reasonable and necessary, and punitive damages if the injury is found to be intentional." (*Ibid.*)

In reaching its holding and the conclusion that "the rule in CACI No. 3903J has no application in this case to prevent proof of out-of-pocket expenses to save the life of a pet cat" (*Kimes, supra*, 195 Cal.App.4th at p. 1560), the *Kimes* court relied in part on the century-old case of *Willard v. Valley Gas & Fuel Co.* (1915) 171 Cal. 9 [151 P. 286] (*Willard*). In *Willard*, the plaintiffs' home and contents were destroyed by a fire negligently caused by the defendant. Lost in the fire were scrapbooks and other data used by the plaintiff in his occupation as a writer. (*Id.* at pp. 14–15.) Though the property had no market value, the court ruled that the property's value " 'must be ascertained in some other rational way, and from such elements as are attainable.' " (*Id.* at p. 16.) The court held that the plaintiff could testify regarding the value of the property to him. (*Id.* at p. 15.) Numerous cases have followed *Willard*, overruled on another ground in *Showalter v. Western Pacific R. R. Co.* (1940) 16 Cal.2d 460, 465–467 [106 P.2d 895].)

The *Kimes* court stated: "In this case, plaintiff is not plucking a number out of the air for the sentimental value of damaged property; he seeks to present evidence of costs incurred for [the cat's] care and treatment by virtue of the shooting—a 'rational way' of demonstrating a measure of damages apart from the cat's market value." (*Kimes, supra*, 195 Cal.App.4th at p. 1561.) The *Kimes* court noted that other states have applied a similar measure of damages (citing *Zager v. Dimilia* (N.Y.J.Ct. 1988) 138 Misc.2d 448 [524 N.Y.S.2d 968, 970]; *Burgess v. Shampooch Pet Industries, Inc.* (2006) 35 Kan.App.2d 458 [131 P.3d 1248]). The court also cited Evidence Code section 823, which provides that " 'the value of property for which there is no relevant, comparable market may be determined by any method of valuation that is just and equitable.' " (*Kimes, supra*, at pp. 1561–1562.)

The *Kimes* court concluded that under Civil Code section 3333 the "plaintiff may present evidence of the bills incurred to save the cat's life and is entitled to recover the reasonable and necessary costs caused by someone who wrongfully injured the cat. Defendants are entitled to present evidence why the costs were unreasonable under the circumstances," and that in addition to the reasonable costs of care occasioned by the shooting the "plaintiff can recover punitive damages on a showing that the shooting was willful." (*Kimes, supra*, 195 Cal.App.4th at p. 1563.)

*Analysis*

Respondents argue that *Kimes* was wrongfully decided because it did not adhere to the traditional measure of damages for injury to personal property, and urge us not to follow it. Additionally, they seek to distinguish *Kimes* by pointing out that the cat in *Kimes* had little to no market value, whereas the parties here stipulated that Gunner and Katie each had a market value of $1,000. We note that this stipulated value was agreed upon solely for the purpose of taking an appeal.

We find *Kimes* persuasive. There can be little doubt that most pets have minimal to no market value, particularly elderly pets. As amicus curiae notes, while people typically place substantial value on their *own* animal companions, as evidenced by the large sums of money spent on food, medical care, toys, boarding and grooming, etc., there is generally no market for *other people's* pets. (See *Burgess v. Shampooch Pet Industries, Inc., supra*, 131 P.3d at p. 1252 ["unlike other types of personal property, there are no true marketplaces that routinely deal in the buying and selling of previously owned pet dogs"]; *Van Patten v. City of Binghamton* (N.D.N.Y 2001) 137 F.Supp.2d 98, 104–105 ["pets are distinguishable from what we normally consider as personal property . . . [;] there is no such thing as replacement"].) We agree that the determination of a pet's value cannot be made solely by looking to the marketplace. If the rule were otherwise, an injured animal's owner would bear most or all of the costs of the medical care required to treat the injury caused by a tortfeasor, while the tortfeasor's liability for such costs would in most cases be minimal, no matter how horrific the wrongdoer's conduct or how gross the negligence of a veterinarian or other 'animal professional.

Moreover, allowing a pet owner to recover the reasonable costs of the care and treatment of an injured pet reflects the basic purpose of tort law, which is to make plaintiffs whole, or to approximate wholeness to the greatest extent judicially possible. (See, e.g., 6 Witkin, Summary of Cal. Law (10th

ed. 2005) Torts, § 1548, p. 1022 ["In tort actions, damages are normally awarded for the purpose of compensating the plaintiff for injury suffered, i.e., restoring the plaintiff as nearly as possible to his or her former position, or giving some pecuniary equivalent."].) Notably, since *Kimes* was published, the Judicial Council has clarified that CACI No. 3903J has no application in circumstances such as these: "Do not give this instruction if the property had no monetary value either before or after injury." (Judicial Council of Cal., Civ. Jury Instns. (Dec. 2011 rev.) Directions for Use for CACI No. 3903J [citing *Kimes*].)

Respondents argue that "[t]o permit animal owners—or at least the owners of otherwise 'valueless' animals—to effectively dictate a value by their unilateral choice concerning the amount they are willing to spend for veterinary care is to treat animals as *sui generis*, as fundamentally different from any other sort of personal property." But the law already treats animals differently from other forms of personal property. For example, 48 states, the District of Columbia, Guam, Puerto Rico and the Virgin Islands, classify some form of animal cruelty as a felony. (See Animal Legal Defense Fund, U.S. Jurisdictions with and Without Felony Animal Cruelty Provisions <http://aldf.org/article.php?id=261> [as of Oct. 23, 2012].) By contrast, the law generally does not treat the abuse or intentional destruction of other forms of one's own property as a crime. State and federal pet evacuation legislation enacted in the wake of Hurricane Katrina also acknowledges the value of animal companions to their human families by providing assistance for the evacuation and temporary shelter of pets in times of emergency or disaster. (See Pets Evacuation and Transportation Standards Act of 2006 (PETS) (Pub.L. No. 109-308 (Oct. 6, 2006) 120 Stat. 1725, codified at 42 U.S.C. § 5121); La. Pet Evacuation Bill (2006 La. Acts 615, codified at La. Rev. Stat. Ann. §§ 29:726(E)(20)–(21), 29:729(E)(13)–(14), 29:733.1).) As amicus curiae states, "These laws reflect the widespread socially-accepted significance of animals and their connection with people, and demonstrate that our legal system recognizes that animals are a unique kind of property." In addition to the out-of-state cases cited in *Kimes*, appellants and amicus curiae cite numerous other foreign cases that support awarding owners damages for injured pets in excess of the pet's value.[4]

---

[4] (See, e.g., *La Porte v. Associated Independents, Inc.* (Fla. 1964) 163 So.2d 267, 269 ["we feel that the affection of a master for his dog is a very real thing and that the malicious destruction of the pet provides an element of damage for which the owner should recover, irrespective of the value of the animal."]; *Brown v. Swindell* (La.Ct.App. 1967) 198 So.2d 432, 434 ["The trial court awarded the plaintiff the sum of $96.00 which he had actually expended in having the animal treated by a veterinarian, and the record adequately supports

■ In California, the Legislature has recognized since 1872 that animals are special, sentient beings, because unlike other forms of property, animals feel pain, suffer and die. Civil Code section 3340 provides that "[f]or wrongful injuries to animals being subjects of property, committed willfully or by gross negligence, in disregard of humanity, exemplary damages may be given." Laws criminalizing animal abuse underscore the Legislature's view that animals are a distinct and specially protected form of property. Penal Code section 597, subdivision (a) provides that "every person who maliciously and intentionally maims, mutilates, tortures, or wounds a living animal, or maliciously and intentionally kills an animal, is guilty of a crime . . . ." Under Penal Code section 597.1, subdivision (a), every owner "of any animal who permits the animal to be in any building, enclosure, lane, street, square, or lot of any city, county, city and county, or judicial district without proper care and attention is guilty of a misdemeanor." Thus, an owner has an affirmative duty to properly care for an animal. There are dozens of other laws criminalizing the mistreatment of animals.[5]

■ Given the Legislature's historical solicitude for the proper care and treatment of animals, and the array of criminal penalties for the mistreatment of animals, as well as the reality that animals are living creatures, the usual standard of recovery for damaged personal property—market value—is inadequate when applied to injured pets.

We agree with the *Kimes* court that allowing an injured pet's owner to recover the reasonable and necessary costs incurred in the treatment and care of the animal attributable to the injury is a rational and appropriate measure of damages. Such evidence is admissible under Civil Code section 3333 as proof of a plaintiff's compensable damages. And a defendant may present evidence showing the costs were unreasonable under the circumstances.

---

this award."]; *Morgan v. Patin* (La.Ct.App. 1950) 47 So.2d 91, 93 ["There is no doubt that the veterinarian fee of $13.00 is due."]; *Kaiser v. U.S.* (D.D.C. 1991) 761 F.Supp. 150, 156 ["The Court finds that, as a result of Miller's negligence, plaintiffs suffered a loss of property in the amount of [veterinarian bills of] $1,786.50."]; *Leith v. Frost* (2008) 387 Ill.App.3d 430, 437 [326 Ill.Dec. 418, 899 N.E.2d 635] [awarding owner of injured dog $4,784 in veterinarian bills].)

[5] For example, it is a crime to overload, overwork, torment or beat any animal, or deprive it of water, food, shelter and protection (Pen. Code, § 597, subd. (b)); transport an animal in "a cruel or inhuman manner" (Pen. Code, § 597a); use animals in fights, for amusement or gain (Pen. Code, § 597b); intentionally trip or fell a horse (Pen. Code, § 597g, subd. (b)); willfully abandon any animal (Pen. Code, § 597s, subd. (a)); confine an animal without an adequate exercise area, or use a leash, rope or chain that would entangle or injure the animal (Pen. Code, § 597t); sell a dog younger than eight weeks old (Pen. Code, § 597z, subd. (a)(1)); injure an animal to be sold while it is still living, or confine, hold or display it in a manner that is likely to result in injury or death (Pen. Code, § 597.3, subd. (a)(1) & (2)).

## DISPOSITION

The stipulated judgments are reversed and the cases remanded for further proceedings in accordance with the views expressed herein. The parties to bear their own costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.

The petition of respondents Stephen E. Klause et al., for review by the Supreme Court was denied January 23, 2013, S207023.