Filed 5/15/23 (unmodified opinion attached)

## CERTIFIED FOR PUBLICATION

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### FIRST APPELLATE DISTRICT
### DIVISION THREE

| | |
|---|---|
| RYAN BERRY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JEFFERY R. FRAZIER, DVM,<br><br>    Defendant and Respondent. | A164168<br><br>(County and City of San Francisco<br> Super. Ct. No. CGC20587086)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed on April 28, 2023, be modified as follows:

On page 4, replace the first full paragraph with the following paragraph:

Frazier and an assistant arrived at Berry's home in the late afternoon. The euthanasia was to take place in the backyard, where Frazier and his assistant prepared the cat for the insertion of a catheter. During this initial attempt to sedate the cat, Frazier told Kraus and Berry, " 'Go over there,' " indicating they should move 30 feet away. They complied, and waited for Frazier to indicate when they could return. After a few moments, Frazier told them that he was unable to place the catheter even though he had tried to do so in all the

cat's limbs.  Berry and Kraus became upset and Kraus suggested an overdose of an oral medication (buprenorphine) that had been prescribed for the cat.  Frazier responded that it would " 'take too long,' " but did not explain how long or why the length of time was significant.

The petition for rehearing is denied.
There is no change in the judgment.

Dated: _____          _____P.J.

A164168/*Berry v. Frazier*

2

Filed 4/28/23 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| RYAN BERRY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JEFFERY R. FRAZIER, DVM,<br><br>    Defendant and Respondent. | A164168<br><br>(County and City of San Francisco<br> Super. Ct. No. CGC20587086) |


Ryan Berry sued Jeffery R. Frazier, a Doctor of Veterinary Medicine, for nominal and punitive damages based on the circumstances surrounding the euthanasia of her cat.[1]

The gravamen of the operative pleading (the first amended complaint, hereafter FAC) is that Berry secured Frazier's services to perform a humane euthanasia on her cat. Instead, and without Berry's informed consent, Frazier performed the euthanasia by means of an unnecessary and unjustified intracardiac injection, resulting in a horrific and painful death for her cat and great emotional distress to Berry. The trial court granted

---

[1] The FAC also named as defendants Vetted Petcare CA, Inc., a California Corporation, Vetted Petcare, Inc., a Delaware Corporation, and two corporate officers (hereafter Vetted). The causes of action against these parties have been dismissed without prejudice.

Frazier's demurrer without leave to amend causes of action for fraud/deceit/intentional misrepresentation, conversion/trespass to chattels, intentional infliction of emotional distress, and violation of Civil Code section 3340, which allows for an award of exemplary damages for wrongful injuries to animals committed willfully or with gross negligence in disregard of humanity.[2]  Following the court's order, Berry voluntarily dismissed the sole remaining cause of action against Frazier and the court clerk entered a dismissal of the entire FAC, resulting in a final judgment dismissing the action.

 We shall reverse the judgment and remand the matter for further proceedings consistent with this opinion.  As discussed below, the FAC contained sufficient allegations to withstand demurrer to the causes of action for fraud/deceit/intentional misrepresentation, conversion/trespass to chattels, and intentional infliction of emotional distress.  And while the trial court properly sustained the demurrer without leave to amend the cause of action for violation of section 3340, Berry should be granted leave to file a second amended complaint to allege a request for section 3340 exemplary damages in connection with other pleaded causes of action.

---

[2] All further undesignated statutory references are to the Civil Code.

**FACTUAL AND PROCEDURAL BACKGROUND**[3]

*Euthanasia of Berry's Cat*

This lawsuit arose after the euthanasia of a cat owned by Berry and James Kraus.[4] On the morning of April 18, 2019, the cat "was clearly dying," though she was not in substantial pain and not having seizures. Berry worried that if the cat were to worsen during the day, warranting euthanasia to prevent suffering, she would not be able to arrange for a veterinarian to make a house call and a car ride to an emergency hospital would cause additional pain and distress to both the cat and Berry.

To address Berry's concern, Kraus contacted Vetted for the same-day service of a veterinarian who would humanely euthanize the cat at home and arrange a private cremation. Vetted represented that the veterinarian would perform the following procedure during which the cat would remain in Berry's arms: the veterinarian would inject the cat with a sedative and then, once Berry had said goodbye, the veterinarian would peacefully end the cat's life with a second injection.

_____

[3] Because this appeal arises from an order sustaining a demurrer, and an appellant may even rely on statements made for the first time on appeal to demonstrate a reasonable possibility the complaint can be amended to state a cause of action (*Eghtesad v. State Farm General Insurance Co.* (2020) 51 Cal.App.5th 406, 414), we accept as true the factual allegations of the FAC, supplemented by those made in Berry's opposition to the demurrer. (*Fenimore v. Regents of University of California* (2016) 245 Cal.App.4th 1339, 1343.) We disregard Frazier's version of the facts as set forth in his responsive brief at pages 17–18 to the extent it is based on trial court pleadings filed in support of his motion to strike certain allegations in the FAC.

[4] Kraus is not a plaintiff in this action. In the FAC, it is alleged that Kraus has transferred to Berry any right he had to recover any kind of relief, "including the $600 he paid to Vetted and any punitive/exemplary damages that he might be awarded if he were to sue on his own behalf."

Frazier and an assistant arrived at Berry's home in the late afternoon. The euthanasia was to take place in the backyard, where Frazier and his assistant prepared the cat for the insertion of a catheter. During this initial attempt to sedate the cat, Frazier told Berry, " 'Go over there,' " indicating she should move 30 feet away. Berry complied, and waited for Frazier to indicate she could return. After a few moments, Frazier told Berry that he was unable to place the catheter even though he had tried to do so in all the cat's limbs. Berry became upset and suggested an overdose of an oral medication (buprenorphine) that had been prescribed for the cat. Frazier responded that it would " 'take too long,' " but did not explain how long or why the length of time was significant.

Frazier then suggested euthanasia by " 'heart stick' " injection, the colloquial term for intracardiac injection, a procedure by which fluid is injected directly into the heart. When Kraus said he had never heard of the procedure, Frazier responded, in a calm and reassuring demeanor, with comments like, " '[i]t's a small needle,' " " 'it's very quick,' " and the cat will " 'never know what's happening' " and " 'won't feel a thing.' " When Berry became emotional, Frazier again calmly described the procedure, adding phrases along the lines of " 'it's the right thing.' " Based on Frazier's representations and in reliance on Frazier's expertise, Berry consented. Frazier then instructed Berry and Kraus to go inside the house, which they did. Frazier and his assistant completed the procedure and left with the cat.

Berry later learned of the "horrors" of using an intracardiac injection to euthanize a conscious cat. Contrary to Frazier's representations, it was " 'extremely painful' " and generally considered " 'inhumane' " when

4

performed on a conscious cat.[5]  According to Berry, a veterinarian should have been aware of the restrictions on the use of an intracardiac injection to euthanize a conscious cat, and the "abhorrent and inhumane nature" of the procedure.  For example, since 2006 the Legislature had made the use of intracardiac injection of a euthanasia agent on a conscious animal illegal " 'unless the animal is heavily sedated or anesthetized in a humane manner, or comatose, or unless, in light of all the relevant circumstances, the procedure is justifiable.' "  (Pen. Code, § 597u, subd. (a)(2), added by Stats. 2005, ch. 652, § 1, effective January 1, 2006.)[6]

Berry alleged that there was "no veterinary, statutory, or contractual justification" for the use of the intracardiac injection as the cat was not in acute, active distress and therefore did not have to be euthanized that day. In addition, Frazier admitted the cat "could have been euthanized painlessly" and died in Berry's arms by giving the cat an "overdose of buprenorphine," even if it would " 'take too long.' "  Had Berry understood the true nature of the intracardiac injection, she would not have consented to the procedure but

---

[5]	In opposing the demurrer, Berry expanded upon her description of the intracardiac injection procedure, alleging it involved the use of a " 'large needle' " that " 'must puncture the chest wall, the pleura (thoracic lining), the pericardium (heart lining), and the heart muscle, the last three of which are full of nerves and capillaries, resulting in extreme pain and hemorrhage.' "

[6]	The FAC included legislative history of the penal code provision prohibiting euthanasia by intracardiac injection except under specified circumstances, as set forth in the analysis of Assembly Bill No. 1426 (2005-2006 Reg. Sess.) as amended June 14, 2005, adding Pen. Code § 597u, subd. (a)(2).  As reported to the Legislature, the intracardiac injection of euthanasia agents in a conscious animal is " 'extremely painful and inhumane.' "  " '[T]he injection of euthanasia agents must be of the correct strength and administered directly into heart,' " which could be " 'very difficult . . . as the needle must travel between the ribs or underneath the sternum, through several layers of muscle, and then to the heart.' "

instead would have opted to give the cat an overdose of buprenorphine and held her cat until it died.

The euthanasia report stated that Berry had "elected humane euthanasia" and Frazier had "[p]erformed an intracardiac inj of 1 ml euthasol (brand name of sodium pentobarbital solution)." It was silent as to whether a sedative had been administered.

*Trial Court Proceedings*

The forty-one page FAC includes 119 paragraphs (¶¶ 20–139) of facts common to all causes of action, plus additional allegations supporting labelled causes of action against Frazier for: (1) fraud/deceit/intentional misrepresentation (third cause of action); (2) breach of fiduciary duty (fourth cause of action); (3) conversion/trespass to chattels (fifth cause of action); (4) intentional infliction of emotional distress (sixth cause of action); and (5) violation of section 3340 (eighth cause of action).[7] The prayer for relief for each cause of action sought nominal damages of $1, restitution of $600 (cost of euthanasia), and punitive damages.

Frazier filed (1) a demurrer to the FAC challenging four of the five causes of action against him (all except the cause of action for breach of fiduciary duty); and (2) a motion to strike certain allegations in the FAC including irrelevant historical information, all references to allegations of Berry's emotional distress, and all references to punitive or exemplary damages. The trial court sustained Frazier's demurrer without leave to amend and treated as moot the motion to strike allegations directed at the

---

[7]     The FAC's remaining causes of action for fraud (first cause of action), false promise (second cause of action), and violation of the unfair competition law (Bus. & Prof. Code, § 17200 et. seq.) (seventh cause of action) were alleged against Vetted.

6

demurred causes of action. The court ruled on the motion to strike limited to the FAC's allegations directed at the cause of action for breach of fiduciary duty.

At Berry's request, the court clerk entered an October 26, 2021 dismissal without prejudice of the cause of action for breach of fiduciary duty and an October 29, 2021 dismissal without prejudice of the entire FAC. This appeal ensued.[8]

## DISCUSSION

### I. The Appeal is Cognizable

Frazier argues Berry's appeal must be dismissed because there is no final judgment of dismissal allowing for appellate review. We disagree.

"Under California's 'one final judgment' rule, a judgment that fails to dispose of all causes of action pending between the parties is generally not appealable." (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1100 (*Kurwa*).) Here, all five causes of action pending between Berry and Frazier were disposed of by a combination of the order sustaining the demurrer and the voluntary dismissal without prejudice of the sole remaining cause of action, the fourth cause of action for breach of fiduciary duty. Together, the trial court's "order sustaining the demurrers without leave to amend, combined with the dismissal of the action, had the legal effect of a final, appealable judgment." (*Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 974.)

---

[8]  We granted the application of Expand Animal Rights Now for permission to file an amicus curiae brief in support of Berry. Frazier filed a response to the amicus brief. We granted Berry permission to file a reply to Frazier's response to the amicus brief, which reply was attached to her request.

7

A plaintiff may appeal from a judgment rendered on adjudicated causes of actions, notwithstanding that another cause of action has been dismissed without prejudice, "as long as there are no remaining claims pending between the parties and the parties have not entered into a stipulation that would facilitate potential litigation of the dismissed" cause of action. (*Abatti v. Imperial Irrigation Dist.* (2012) 205 Cal.App.4th 650, 655.) Because there are no pending claims and no such stipulation in this case, Berry's appeal seeking review of the demurrer order is properly before us. [9] (*Ibid.*; see *Kurwa, supra,* 57 Cal.4th at p. 1106 [when parties agree to waive or toll the statute of limitations on a dismissed cause of action pending an appeal, "[i]t is that assurance — the agreement keeping the dismissed count legally alive

---

[9] We dismiss the separate appeal from the October 7, 2021 order on demurrer as it is not separately appealable. (See *Shepardson v. McLellan* (1963) 59 Cal.2d 83, 87 ["purported appeal from order sustaining demurrer . . . is, of course, not separately appealable, but is reviewable on appeal from the final judgment"]; Code Civ. Proc., § 906.)

We also dismiss the separate appeal from the October 7, 2021 order on the motion to strike as it is not separately appealable. (*Grieves v. Superior Court* (1984) 157 Cal.App.3d 159, 166, fn. 7 ["an order granting a motion to strike is not itself appealable"].) While a motion to strike order is reviewable on appeal from a final judgment (*ibid.*), review does not lie here because Berry is not aggrieved by the order as the trial court limited its ruling to striking allegations directed at the dismissed fourth cause of action for breach of fiduciary duty. (*El Dorado Irrigation Dist. v. State Water Resources Control Bd.* (2006) 142 Cal.App.4th 937, 977 [" '[a] party who is not aggrieved by an order or judgment has no standing to attack it on appeal' "].)

Finally, we dismiss the appeal from the October 26, 2021 order dismissing the fourth cause of action for breach of fiduciary duty against Frazier. Because Berry voluntarily dismissed that cause of action without prejudice, she has no standing to appeal the order. (*El Dorado Irrigation Dist. v. State Water Resources Control Bd., supra,* at 142 Cal.App.4th at p. 977.)

8

— that prevents the judgment disposing of the other causes of action from achieving finality"].)

## II. Legal Framework for Review of Demurrer

"The rules by which the sufficiency of a complaint is tested against a general demurrer are well settled. We not only treat the demurrer as admitting all material facts properly pleaded, but also 'give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . .' [¶] If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 (*Quelimane*).)

" 'The courts of this state have . . . long since departed from holding a plaintiff strictly to the "form of action" [that] has [been] pleaded and instead have adopted the more flexible approach of examining the facts alleged to determine if a demurrer should be sustained.' " (*Quelimane*, *supra*, 19 Cal.4th at pp. 38–39.) Where, as here, the demurrer is based on a claim that the pleading does not state facts sufficient to constitute a cause of action, if it " 'appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' " (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572.)

"In reviewing the legal sufficiency of a demurrer, we are not concerned with plaintiff's ability to prove the allegations of the complaint, or the possible difficulties in making such proof. Neither are we bound by the trial court's construction of the pleadings; instead, we exercise our independent

9

judgment in determining whether the complaint states a cause of action." (*Schmidt v. Foundation Health* (1995) 35 Cal.App.4th 1702, 1706.)

## III. Third Cause of Action for Fraud/Deceit /Intentional Misrepresentation ("Fraud")

The essential elements of fraud that give rise to a cause of action for deceit or intentional misrepresentation are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) actual and justifiable reliance; and (e) resulting damage. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974 [elements of intentional misrepresentation]; *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [elements of deceit]; see §§ 1709, 1710[10].) The first element, misrepresentation, is satisfied by a failure to fully disclose material facts. (*Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249, 255; see § 1710, subd. 3; see also *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.* (1992) 6 Cal.App.4th 603, 612–613.) Justifiable reliance may be premised upon allegations that a defendant made representations in his professional capacity, for example as a veterinarian. (See *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 769 [a fraud claim may be based on opinion

---

[10] Section 1709 reads: "One who willfully deceives another with the intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Section 1710 reads: "A deceit, within the meaning of the last section, is either: [¶] 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; [¶] 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; [¶] 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts, which are likely to mislead for want of communication of that fact; or, [¶] 4. A promise, made without any intention of performing it."

10

either " 'where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge;' " or " 'where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion' "].)

In sustaining the demurrer to the fraud cause of action, the trial court stated: "Plaintiff alleges that Defendant intentionally misled her about the method of euthanasia he performed on her cat and manipulated her into giving consent for the intracardiac injection. (FAC, ¶ 107). Plaintiff fails to allege with specificity that any of Defendant's statements constituted actionable false representations." In a similar vein, Frazier argues that Berry has not presented "any competent or reasonable evidence" that his purported representations were false or that there was no justification for the use of an intracardiac injection to euthanize the cat on that day.

We disagree as the FAC contains sufficient allegations showing how, when, where, to whom, and by what means fraudulent representations were made. For example, Berry alleged Frazier stated he would be using " 'a small needle,' " the procedure would be " 'very quick,' " and the cat " 'wouldn't feel it.' " Berry gave her consent, but would never have done so had she known the procedure was not a humane euthanasia as Frazier had represented, but instead was " 'extremely painful' " and considered " 'inhumane.' " Berry further alleged Frazier "admitted" the cat could have been euthanized painlessly and in her arms with an overdose of buprenorphine, but it would not be "fast enough for [Frazier's] schedule." The FAC's allegations are neither conclusory nor mere casual expressions of belief. The FAC sets forth explicit affirmative representations made by Frazier concerning the use of an intracardiac injection – that the procedure would be quick and painless – that any animal owner would want to know before consenting to the procedure.

11

In addition, Berry was required only to plead facts showing entitlement to some relief to survive demurrer; she was not required to present evidence. (*Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1103.) And Berry was not required to allege facts not known to her as a lay person not trained as a veterinarian. (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158 [while a claim for fraud must be pled with specificity, a plaintiff cannot allege facts not in her possession or when the facts lie more in the defendant's knowledge].)

Finally, we see no merit to Frazier's argument that the demurrer to the fraud cause of action was properly sustained because Berry failed to allege legally cognizable damages. According to Frazier, Berry claimed she had the right to " 'give the cat a good death' " and was damaged by being deprived of that right. In urging that Berry's claimed loss (her right to " 'give the cat a good death' ") is not actionable because Berry was not the subject or beneficiary of the veterinary care, Frazier asks us to consider *McMahon v. Craig* (2009) 176 Cal.App.4th 1502 (*McMahon*) at page 1510: "[A]lthough a veterinarian is hired by the owner of the pet, the veterinarian's medical care is directed only to the pet. Thus, a veterinarian's malpractice does not directly harm the owner in a manner creating liability for emotional distress." *McMahon* is inapposite as that court was not concerned with, and therefore had no occasion to address, the nature of damages that could be recovered for a claim of fraud based not on a veterinarian's malpractice but rather on intentional misrepresentations made to induce a pet owner to consent to an unnecessary, unjustified, and painful procedure. (See *Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 217 ["[i]t is, of course, 'axiomatic that a decision does not stand for a proposition not considered by the court' "].)

12

For the stated reasons, we conclude the demurrer to the third cause of action for fraud should have been overruled. (See *Gale v. Animal Med. Ctr.* (N.Y.A.D. 2013) 108 A.D.3d 497, 499 [plaintiff stated a cause of action for fraud based on allegations, among others, that defendants knowingly made false statements to plaintiff concerning the results of a CT scan to induce her to consent to a contraindicated surgical procedure for her cat, which resulted in the cat's death].)

## IV. Fifth Cause of Action for Conversion/Trespass to Chattels

The essential elements of conversion are: (1) the plaintiff owned or had the right to possess the personal property; (2) the defendant disposed of the property in a manner inconsistent with the plaintiff's property rights; and (3) resulting damages. (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150–1151 (*Voris*).) The defendant's conduct "must be knowingly or intentionally done," but a "*wrongful intent*" or motive is not a requirement. (*Taylor v. Forte Hotels International* (1991) 235 Cal.App.3d 1119, 1124, italics in original (*Taylor*); see *Voris, supra*, at p. 1150.) Because the defendant's conduct "must be knowingly done, 'neither negligence, active or passive, nor a breach of contract, even though it results in injury to, or loss of, specific property, constitutes a conversion.' [Citation.] It follows therefore that mistake, good faith, and due care are ordinarily immaterial, and cannot be set up as defenses in an action for conversion." (*Taylor, supra*, at p. 1124.) Nonetheless, "there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." (*Farrington v. A. Teichert & Son, Inc.* (1943) 59 Cal.App.2d 468, 474.)

In contrast, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury" (*Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1556), but the

13

interference is " 'not sufficiently important to be classed as conversion' " (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1350). "Though not amounting to conversion," in an action for trespass to chattels "the defendant's interference must . . . have caused some injury to the chattel or to the plaintiff's rights in it." (*Ibid.;* see *Plotnick v. Meihaus* (2012) 208 Cal.App.4th 1590, 1605, 1606–1608 (*Plotnick*) [owner of dog could sue for trespass to chattels for the intentional striking of the dog with a bat]; *Jamgotchian v. Slender* (2009) 170 Cal.App.4th 1384, 1400–1402 (*Jamgotchian*) [owner of horse injured in race could sue for trespass to chattels based upon track steward's refusal to remove the horse from the race].)

In sustaining the demurrer to the cause of action for conversion/trespass to chattels, the trial court opined that "[t]he gravamen of Plaintiff's argument is that the procedure Plaintiff hired Defendant to perform, and to which she consented, did not occur in exactly the manner that Plaintiff hoped or expected." On appeal, Frazier asserts that his alleged conduct gives rise to nothing more than a professional negligence claim and cannot form the basis for a trespass to chattels cause of action. However, the FAC's allegations go well beyond a claim of negligent performance of veterinary services, or services that did not occur "exactly" as hoped or expected.

We agree with Berry that *Levy v. Only Cremations for Pets, Inc.* (2020) 57 Cal.App.5th 203 (*Levy*) is instructive. In that case, the court recognized a cause of action for trespass to chattels allowing for the recovery of emotional distress damages based upon a pet crematorium's alleged mishandling of pet cremains — services geared toward the family members, and not the deceased animal. (*Id.* at pp. 208, 216.) In recognizing that the animal owner could pursue causes of action for trespass to chattel and negligence, the *Levy*

14

court commented that the relationship between the crematorium and the pet owner was predicated on the crematory's agreement to provide a "dignified treatment of pet remains," thereby giving "emotional solace to grieving pet owners." (*Id.* at p. 219.) Here, too, the veterinarian and pet owner are alleged to have had a relationship predicated on the veterinarian's agreement to provide for a humane euthanasia of a dying animal (i.e., "dignified treatment" of a dying pet), thereby giving "emotional solace" to a grieving pet owner who has made the difficult decision to euthanize the pet.

We find the case before us is not akin to *Stone v. Foster* (1980) 106 Cal.App.3d 334 (*Stone*), as Frazier contends. In *Stone*, the court held that a claim of fraud did not lie based on allegations that a physician had failed to advise a patient of " 'low probability' " risks inherent in an operation. (*Id.* at pp. 345–346.) Here we are concerned with the likely actual effects of euthanasia by intracardiac injection on a conscious cat, and Berry specifically alleges Frazier obtained her consent to the procedure by informing her it would be painless when he knew or reasonably should have known that it would indeed be extremely painful.

Frazier's reliance on *McMahon*, *supra*, 176 Cal.App.4th 1502, is also not persuasive as *McMahon* does not address the issues before us. In *McMahon*, the plaintiff alleged defendants engaged in negligent veterinary malpractice and lied to her to cover up their malpractice. (*Id.* at p. 1506.) While the complaint included a cause of action for conversion, *McMahon* did not address that cause of action in resolving the appeal. (*Id.* at pp. 1508–1520.) Nor did the *McMahon* court address a cause of action for trespass to chattels. (*See Plotnick*, *supra*, 208 Cal.App.4th at p. 1606 [court held plaintiff could recover emotional distress damages for trespass to chattels cause of

15

action, finding *McMahon* was inapposite as it "did not involve an action for trespass to personal property"].)

Finally, we find no merit to Frazier's arguments that Berry failed to allege facts satisfying the elements of conversion or trespass to chattels – including a protectible legal right, intent, and lack of consent – since the goal of her request for services was the animal's demise and he did not intentionally harm the cat. These arguments ignore the specific allegations that Berry had a legally protectible right to decide the time and manner of the euthanasia of her cat because the cat was her personal property. The FAC alleges Frazier acted in denial of Berry's property rights by improperly obtaining her consent to euthanize the cat by intracardiac injection after she had entrusted the cat to him for humane euthanasia. (See *Jamgotchian, supra*, 170 Cal.App.4th at pp. 1400–1402 [one who intentionally intermeddles with another's chattel is subject to liability if his intermeddling is harmful to a possessor's legally protected interest in the chattel]; *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1433 [" 'in practical terms, a conversion can only occur after an owner has entrusted . . . property to another;' " " '[t]hereafter, if the possessor acts in a manner inconsistent with the owner's interest, the owner's cause of action for conversion accrues' "]; see also *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 433 ["[d]amages for mental distress have been awarded in cases where the tortious conduct was an interference with property rights without any personal injuries apart from the mental distress"].)

Simply put, the allegations suffice to support a claim that trespass to chattels is what Frazier accomplished by "fraudulently inducing" Berry to consent to euthanizing the cat by intracardiac injection, "unsedated, and without being able to be present or even say goodbye to her beloved

16

companion." Accordingly, the demurrer to the fifth cause of action for conversion/trespass to chattels should have been overruled.

## V. Sixth Cause of Action for Intentional Infliction of Emotional Distress ("IIED")

The elements of a cause of action for IIED are as follows: (1) defendant engaged in extreme and outrageous conduct (conduct so extreme as to exceed all bounds of decency in a civilized community) with the intent to cause, or with reckless disregard to the probability of causing, emotional distress; and (2) as a result, plaintiff suffered extreme or severe emotional distress. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001.) Additionally, " '[i]t must be conduct *directed at the plaintiff*, or occur in the presence of the plaintiff *of whom the defendant is aware*.' [Citation.] 'The requirement that the defendant's conduct be directed primarily at the plaintiff is a factor which distinguishes intentional infliction of emotional distress from the negligent infliction of such injury.' " (*Id.* at p. 1002, italics in original; see *So v. Shin* (2013) 212 Cal.App.4th 652, 671 (*So*) [conduct must be directed to the plaintiff, but malicious or evil purpose is not required].)

It is well settled that "in a proper case a person's intentional injuring or killing a pet" will support an owner's recovery of damages for IIED. (*Plotnick, supra,* 208 Cal.App.4th at p. 1611 [award of IIED damages was sustainable where the evidence supported a conclusion that one of the defendants had gone to his garage, retrieved a bat, and used it to intentionally strike plaintiff's dog].) "[W]hether conduct is 'outrageous' is usually a question of fact." (*So, supra,* 212 Cal.App.4th at p. 672.) " '[T]he standard for judging outrageous conduct does not provide a "bright line" rigidly separating that which is actionable from that which is not. Indeed, its generality hazards a case-by-case appraisal of conduct filtered through the

17

prism of the appraiser's values, sensitivity threshold, and standards of civility. The process evoked by the test appears to be more intuitive than analytical. . . .' " (*KOVR-TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1028.)

The trial court sustained the demurrer to the IIED cause of action because Berry had consented to the intracardiac injection "which resulted in the desired outcome," the euthanasia procedure was not done in Berry's immediate presence thereby barring emotional distress damages, and there were no allegations of extreme and outrageous conduct. We find the court's rationale unavailing.

First, and again, the FAC specifically includes allegations that Berry's consent had been secured by representations that were either affirmatively false or at a minimum intentionally misleading as to the horrific effect of using an intracardiac injection to euthanize a conscious cat. Moreover, the FAC includes allegations that Frazier's conduct was specifically directed at Berry as Frazier was aware she sought a euthanasia that would be both humane and would give her emotional solace. Nonetheless, Frazier, for his own motives and aware of the suffering caused by an intracardiac injection, intentionally misled Berry to secure her consent to the unnecessary and unjustifiable procedure.

We are not persuaded by Frazier's argument that dismissal of the IIED cause of action is supported by *McMahon*, *supra*, 176 Cal.App.4th 1502. In *McMahon*, the court found a claim for IIED could not be based on concealment of negligent veterinary care (specifically, provision of pet food after a surgery, failure to provide necessary postoperative care, and lying about the severity of the pet's recovery complication). (*Id*. at pp. 1515–1517.) The IIED claim could not lie because the defendants' "alleged acts of

18

malpractice . . . were neither directed at McMahon nor were they done in her presence" and "medical care is directed only to the pet." (*Id.* at pp. 1511, 1516.) Here, however, the IIED cause of action is predicated upon Frazier's alleged conduct directed at Berry – that he intentionally lied to or misled her about the nature of an inhumane and painful euthanasia, thereby obtaining consent under false pretenses and resulting in Berry suffering severe emotional distress once she learned that she had allowed her cat to suffer an unnecessary and extremely painful death. These allegations go far beyond negligent care and describe conduct directed at Berry.

For these reasons, the demurrer to the sixth cause of action for IIED should have been overruled.

## VI. Eighth Cause of Action for Violation of Section 3340

### A. Section 3340 Does Not Provide an Independent Cause of Action for Exemplary Damages

The eighth cause of action is labelled "Violation of Section 3340," which statute reads in full: "For wrongful injuries to animals being subjects of property, committed willfully or with gross negligence, in disregard of humanity, exemplary damages may be given." In sustaining the demurrer without leave to amend, the trial court ruled that no separate cause of action could be alleged for a violation of section 3340. We agree.

Generally, a plaintiff may allege a cause of action for a violation of a statute only if the language of the statute or its legislative history demonstrates the Legislature intended to create such a right. (*Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 62–63.) Here, there exists no legislative history to shed light on the Legislature's intent. And while the language of section 3340 makes clear that the Legislature intended to provide a specific remedy (exemplary damages) for wrongful

19

injuries to animals, it does not define the term "wrongful injuries" and does not otherwise evidence an intent to create a separate cause of action for a violation of the statute.

In its 150-year history, whether section 3340 provides an independent cause of action has never been analyzed or upheld. In the few cases that have cited the section, the courts have interpreted the statute as permitting a plaintiff to seek section 3340 exemplary damages in actions based on wrongful injuries to an animal caused by intentional conduct but have not expressly allowed or approved of an independent section 3340 cause of action. (See, e.g., *Plotnick*, *supra*, 208 Cal.App.4th at p. 1607 [plaintiffs alleged their dog was injured by defendant's striking the dog with a bat; the court commented that "one can be held liable for punitive damages if he or she willfully or through gross negligence wrongfully injures an animal," citing § 3340]; *Kimes v. Grosser* (2011) 195 Cal.App.4th 1556, 1563 (*Kimes*) [plaintiff asserted his pet cat was intentionally shot with a pellet gun; the court held that, in addition to the cost of care, punitive damages were available under § 3340 on a showing that the shooting was willful]; see also *Dryer v. Cyriacks* (1931) 112 Cal. App. 279, 281, 284 [plaintiff sought compensatory and exemplary damages under § 3340 based on the defendant firing shots at a car and shooting the plaintiff's dog (who, unbeknownst to the defendant, was in the rear seat); the court upheld the grant of a new trial on damages stating, in relevant part, that "under the circumstances under which the shooting took place," the jury's award of $25,000 of exemplary damages was "grossly excessive"].)

Accordingly, the trial court properly sustained the demurrer without leave to amend the eighth cause of action labelled violation of section 3340.

**B.** **Section 3340 Exemplary Damages May Be Sought as a Remedy for Violation of Other Causes of Actions**

While there is no independent cause of action for a violation of section 3340, it does provide the basis for exemplary damages in certain cases. Section 3340 exemplary damages "are remedies available to a party who can plead and prove the circumstances" set forth in the statute, namely, wrongful injuries to animals who are subjects of property, committed willfully or with gross negligence, in disregard of humanity. (See *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 391 (*Hilliard*) [while "there is no cause of action for punitive damages," those "damages are remedies available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294, the cases interpreting this code section, *or by other statutory authority*," fns. omitted, italics added].) Because exemplary damages " 'are merely incident to a cause of action and can never constitute a basis thereof,' " Berry should have pleaded her request for section 3340 exemplary damages in connection with other pleaded causes of action, using section 3340's "statutory language plus sufficient facts" to support her allegation that Frazier's conduct (wrongful injury to Berry's cat) was done willfully and in disregard of humanity.[11] (*Hilliard, supra,* at p. 392 [court found plaintiff should have pleaded request for section 3294 punitive damages in her

---

[11] While section 3340 allows for exemplary damages based on conduct committed either willfully or with gross negligence, in disregard of humanity, the FAC currently eschews any reliance on a claim that Frazier's conduct was committed with "gross negligence." The FAC specifically alleges that Frazier's conduct and actions "were not negligent; he did not simply fail to use due care, even grossly so. His actions and conduct were intentional and calculated to achieve the result that happened."

21

negligence and strict liability causes of action, using § 3294 "statutory language plus sufficient facts" to support an award under § 3294].)

Accordingly, we shall remand this matter to the trial court with instructions to grant Berry's request for permission to file a second amended complaint to plead her request for section 3340 exemplary damages as a remedy in connection with other causes of action. At this time, we do not decide whether Berry may appropriately seek section 3340 exemplary damages in connection with any particular existing cause of action set forth in the FAC. Rather, we find only that 3340 exemplary damages may be available as a remedy and, therefore, Berry should be allowed to claim such damages. (See, e.g., *Plotnick*, *supra*, 208 Cal.App.4th at p. 1607 [§ 3340 exemplary damages are available in trespass to chattels action]; *Kimes*, *supra*, 195 Cal.App.4th at p. 1563 [§ 3340 exemplary damages are available if plaintiff proves intentional conduct caused injury to animal].) We express no opinion as to whether Berry will be able to successfully plead section 3340 exemplary damages that will withstand a demurrer or a motion to strike.[12]

Finally, we disagree with the trial court's ruling that Berry could not recover section 3340 exemplary damages because the cat's demise was not

---

[12]    Because we are remanding the matter with instructions to the trial court to allow Berry to file a second amended complaint, and the trial court did not rule on Frazier's motion to strike the requests for punitive damages under section 3294 related to the causes of action for fraud, conversion/trespass to chattels, and IIED, we need not and do not address the parties' arguments regarding Berry's entitlement to exemplary damages under section 3294 related to her causes of action for fraud, conversion/trespass to chattels, and IIED, and whether Berry was required to and, if so, did comply with Code of Civil Procedure section 425.13, which imposes special procedural requirements on parties seeking punitive damages under section 3294 against health care providers including veterinarians.

"wrongful" as Berry had hired and consented to Frazier's method of euthanasia. In addressing the issue, we must give due deference to the allegations as set forth in the FAC, which is replete with allegations that there was no actual consent as any consent was achieved by Frazier's alleged fraudulent representations. Whether Berry will be able to demonstrate that Frazier's conduct supports an award of exemplary damages pursuant to section 3340 is a question to be decided in future proceedings, and not on demurrer.

C.      **The Demurrer Cannot Be Sustained on the Basis that Section 3340 Does Not Apply to Veterinarians or that the FAC States Only a Claim for Professional Negligence Not Within the Scope of Section 3340**

We see no merit to Frazier's arguments that the request for relief under section 3340 does not lie because the statute does not apply to veterinarians and the FAC's allegations state only a claim for professional negligence (i.e. veterinary malpractice), which does not fall within the scope of section 3340.

Section 3340 is broadly worded to allow for an award of exemplary damages against any defendant for wrongful injuries to an animal committed "willfully or with gross negligence, in disregard of humanity." We assume " 'the Legislature knew how to create an exception if it wished to do so' " and had the Legislature wanted to exclude certain potential defendants (veterinarians) from the statute's coverage, "it could readily have done so." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349.)

Frazier cites no cases for his assertion that his alleged conduct would support only a cause of action for professional negligence, and not intentional conduct under section 3340. (*Golightly v. Molina* (2014) 229 Cal.App.4th

23

1501, 1519 [appellate " 'review is limited to issues which have been adequately raised and briefed' "].)  Instead, he asks us to consider that he acted within his professional judgment in recommending the use of the intracardiac injection and that the procedure was justified as "the most humane and compassionate option" under the circumstances.  In resolving this demurrer, we decline to rely on Frazier's version of the events as a challenge to the FAC's allegations "is simply not the appropriate procedure for determining the truth of disputed facts."  (*Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, 879.)

D.   **The Request for Section 3340 Exemplary Damages is Not Subject to Section 3294's Procedural Requisites**

Frazier also contends that allowing Berry to pursue her request for section 3340 exemplary damages ignores that she must also comply with the procedural requisites under section 3294.  We disagree.

Sections 3294 and 3340 were enacted in the same year.  (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 819; *Martinez v. Robledo* (2012) 210 Cal.App.4th 384, 392.)  Section 3294 has since been amended several times, and currently provides for exemplary damages in an action not arising from contract where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.  (*Id.*, subd. (a).) "(1) 'Malice' means conduct which is intended by the defendant to cause injury to *the plaintiff* or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of *others*. [¶] (2) 'Oppression' means despicable conduct that subjects *a person* to cruel and unjust hardship in conscious disregard of that *person's* rights. [¶] (3) 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the

24

defendant of thereby depriving *a person* of property or legal rights or otherwise causing injury." (*Ibid.*, italics added.)  As is evident on its face, section 3294 governs an award of exemplary damages for wrongful conduct that causes injury to *persons*.

In contrast, section 3340 is a special statute governing an award of exemplary damages for wrongful conduct that causes injury to *animals*. While section 3340 has not been amended since its enactment in 1872, its continued validity and purpose is supported by later legislature.  In 1975, the Legislature enacted section 21855 of the Food and Agricultural Code in which it provided that exemplary damages may be awarded as provided in section 3340 in "a proper case, which shall include the killing and slaughter of cattle." (Stats. 1975, ch. 292, § 1, p. 723.)  Currently, section 21855 retains the provision allowing for an award of exemplary damages as provided in section 3340.  (Stats. 2013, ch. 531, § 25, operative July 1, 2014.)

In addition, the few published California cases citing section 3340 interpret the statute as permitting an animal owner to seek exemplary damages for intentional conduct in disregard of humanity in conjunction with traditional tort causes of action without reference to the procedural requisites of section 3294.  (See, e.g., *Plotnick*, *supra*, 208 Cal.App.4th at p. 1607; *Kimes*, *supra*, 195 Cal.App.4th at p. 1563.)

Considering the clear focus of section 3340, we see no reason to engraft the procedural requisites of section 3294 into section 3340.  It is well settled that "[a] specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (*Rose v. State of California* (1942) 19 Cal.2d 713, 723–724; see *Smith v. Rickard* (1988) 205 Cal.App.3d 1354, 1361

25

[" '[i]f a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others' "].)

In any event, it is for the Legislature to determine whether the procedural requisites of section 3294 should be applied to a request for exemplary damages under section 3340. While over the years the Legislature has modified the statute governing exemplary damages in general (§ 3294) and enacted procedural requisites for requests for exemplary damages against medical care providers including veterinarians (Code Civ. Proc., § 425.13), it has not amended section 3340 since 1872. If we as an appellate court were to engraft the procedural requisites of section 3294 into section 3340, we would be violating "the cardinal rule that a statute '. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' " (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1097; see, also *People v. One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 475 [a court of appeal is "not authorized to insert qualifying provisions not included and may not rewrite the statute to conform to an assumed intention which does not appear from its language"].)

## DISPOSITION

The appeals from the October 7, 2021 demurrer order, the October 7, 2021 motion to strike order, and the October 26, 2021 order dismissing the fourth cause of action without prejudice, are dismissed.

We reverse the judgment of dismissal and remand the matter for further proceedings. On remand the trial court is directed to vacate the dismissal of the first amended complaint entered on October 29, 2021. The trial court is also directed to modify its October 7, 2021 demurrer order by (1) vacating the provisions sustaining the demurrer to the first amended

26

complaint without leave to amend the third, fifth, and sixth causes of action; (2) adding provisions overruling the demurrer to the third, fifth, and sixth causes of actions; and (3) granting plaintiff permission to file a second amended complaint to include factual allegations in support of a request for exemplary damages pursuant to Civil Code section 3340 in connection with other pleaded causes of action.  In all other respects, the October 7, 2021 demurrer order is affirmed.  Because we are instructing the trial court to permit Berry to file a second amended complaint, our decision is without prejudice to Frazier filing a demurrer and motion to strike to any new amended pleading.

Plaintiff and appellant Ryan Berry is awarded costs on appeal.

_____
Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Rodríguez, J.

A164168/*Berry v. Frazier*

Trial Court:       San Francisco County Superior Court

Trial Judge:      Hon. Ethan P. Schulman

Counsel:          James B. Kraus for Plaintiff and Appellant.

                   Ryther Law Group and Jill Ryther for Expand Animal Rights Now as Amicus Curiae on behalf of Plaintiff and Appellant.

                   Haapala, Thompson & Abern and Elizabeth Gong Landess for Defendant and Respondent.